SUCCESSION OF WILLIAM R. FALCONER—CHARLES MORGAN,
Appellant.

The laws in force prior to the promulgation of the Civil Code of 1825, relative to the recording of mortgages in the country parishes, provided that all acts of mortgage should be recorded in the office of the judge of the parish where the mortgaged property was situated. They required no separate record of mortgages to be kept, but directed that all notarial acts, whether creating mortgages or not, should be recorded in numerical order, in the same book. Acts of 24th March, 1810, and 26th March, 1815. Hence, where an act was passed before a Parish Judge, in his notarial capacity, relative to property in his parish, no further inscription was necessary to give effect, against third persons, to the mortgage resulting from it. By the Code of 1825, the duties previously prescribed only to the Register of Mortgages in New Orleans, were extended to the Parish Judges throughout the State. C. C. 3349, 3350, 3351, 3353, 3356.

It is the registry, in the manner pointed out by law, which alone gives effect to a mortgage, as against third persons ; as to them, it is valid, not as it has been executed between the parties, but as it has been recorded. It is incumbent on the creditor who claims a preference over others, to give notice of his claim, in the manner pointed out by law. If he fail to ascertain that his mortgage has been correctly registered, he must suffer for the error, saving his recourse against the recorder. Creditors are not bound to look beyond the register itself, or the certificate which the recording officers are bound to make out. C. C. 3357.

APPEAL from the Court of Pointe Coupée, *Cooley*, J.

*Ilsley*, for the appellant.

L. *Janin*, contra.

MORPHY, J. A tableau of distribution having been filed by the administratrix of the estate of the late William R. Falconer, various oppositions were made to it. Among them was one, filed by several of the ordinary creditors of the deceased, to the claim of Charles Morgan, who was therein set down as a mortgage creditor for $14,715. This opposition having been sustained by the court below, Charles Morgan has appealed.

The record shows that, on the 25th of April, 1838, the deceased executed to the appellant, before the Parish Judge of Pointe Coupée, a mortgage on a tract of land and a number of slaves, to secure the payment of $14,715, with nine per cent interest per annum, and that on the same day this mortgage was recorded by the Parish Judge, under No. 728, in the book by him kept for the

registry of the legal and conventional mortgages of the parish ; but that, through inattention, no doubt, the recording was not made in conformity with the original act, the amount stated in the book of mortgages being only $1415, instead of $14,715. A statement of the present Parish Judge of Pointe Coupée, received as evidence on the trial, further shows, that for the registry of mortgages in his parish two books are kept; one called the Book of Legal and Conventional Mortgages, and another in which the judicial mortgages are recorded; and that when certificates of mortgages are given, these books are alone examined. The appellant claims the benefit of the mortgage for the amount mentioned in the notarial act, while the appellees contend that the mortgage is valid and binding on them only to the amount for which it has been enregistered.

It is urged, on the part of the appellant, that it is sufficient for the preservation of a mortgage in the country parishes of the State, if the act containing it is on file, or is recorded in the Parish Judge's office, whether it be transcribed into the Record of Mortgages or not; that, at all events, the mortgage in question was recorded in the Book of Mortgages, and that the registry itself afforded the means to all persons inspecting it of discovering the error committed, inasmuch as it gave the date of the notarial act in which the mortgage had been stipulated. In support of the first position assumed, we have been referred to various decisions to be found in 3 Martin, N. S. 352. 6 Ib. N. S. 121. 2 La. 576. 7 La. 460. But all these decisions will be found, upon examination, to be based on provisions of law then in force, which pointed out no particular manner in which mortgages were to be recorded in the country. Far from requiring a separate record of mortgages to be kept, those laws only prescribed that the acts containing mortgages should be recorded in the office of the judge of the parish where the mortgaged property was situated, and that all notarial acts, whether creating mortgages or not, should be recorded in numerical order in one and the same book. Hence it was held, that when an act was passed before a Parish Judge in his notarial capacity, relating to property situated in his parish, no further transcription or inscription was necessary to give effect to the mortgage resulting from it against third persons.

Bullard & Curry's Digest, 595, 596. But the framers of the Louisiana Code, taking into view, no doubt, the growth of our population and the consequent increase of transactions, thought proper to place the country and the city on the same footing in relation to the registry of mortgages, and extended to the different Parish Judges of the State the duties which the Code of 1808 had prescribed only to the Register of Mortgages of New Orleans. Civ. Code, arts. 3349, 3350, 3351, 3353, 3356. These provisions require, distinctly, the keeping and recording of mortgages in certain books to be kept for that purpose; they describe the nature of the acts to be recorded in each book or register, and provide that the Recorder of Mortgages, and Parish Judges fulfilling the same duties, shall deliver to all persons who may demand them, certificates of the mortgages, privileges, or donations which they may have thus recorded. These several enactments are preceded by article 3297, which declares that, "among creditors the mortgage whether conventional, legal, or judicial, has force only from the time of recording it in the manner hereinafter directed, except in the cases mentioned below"; and by article 3314, which says, "conventional mortgage is acquired only by consent of the parties, and judicial and legal mortgages, only by the effect of a judgment or by operation of law. But these mortgages are only allowed to prejudice third persons, when they have been publicly inscribed on records kept for that purpose, and in the manner hereinafter directed." From the foregoing provisions of law it is clear, that it is the 'enregistering alone, in the manner pointed out by law, which gives effect to a mortgage against third persons. If this be true, it is equally clear that a mortgage can be binding on them only for the amount thus enregistered.

As to the argument, that the mortgage was recorded with a reference to the notarial act, by consulting which the error might have been discovered, it is a sufficient answer to say, that a conventional mortgage is by law valid as to third persons, not as it has been executed between the parties, but as it stands recorded, notice being of its essence as regards such third persons. It is incumbent on the creditor who claims a preference over other creditors, to give such notice in the manner prescribed by law. It is in his power to ascertain whether the registry of his mort-

gage has been correctly made. If he fails to do this, he must suf-
fer for the error committed by the recorder, saving his recourse
against the latter ; but the other creditors are not bound to look be-
yond the register itself, or beyond the certificate of mortgages which
the recording officers are bound to make out and deliver from
such register. The law which makes it the duty of a notary
who passes an act of sale, and of a sheriff who sells property un-
der seizure, to procure a certificate of mortgages will be vain in-
deed, if the purchaser were bound, at his peril, to look beyond
such certificate, lest the recorder might have committed some
error. ˙Such a construction would, at once, destroy the value
and usefulness of our registry laws, by introducing into all trans-
actions concerning immoveable property the utmost danger and
insecurity. 4 Troplong, Priv. et Hypoth. p. 356, No. 1002. Civ.
Code, art. 3357. 9 La. 354.

*Judgment affirmed.*