## James D. Swan *v.* George Moore.

14 | 833
125 | 162
e125 | 164

Where a party is interrogated on facts and articles, and his answer is ambiguous, but the fact sought to be established is rendered reasonably certain by the circumstances to which the party interrogated refers in his answers, it will be considered as sufficiently proved.

The want of belief on the part of one who has been informed of the existence of an unrecorded title to property, does not impair the effect of the notice thus received.

Creditors are as much bound by the actual knowledge of a prior unrecorded title as subsequent purchasers are, the law having made no distinction between them as to the effect of notice or knowledge derived from the registry of an act of sale or mortgage.

Actual knowledge of an *unrecorded title* on the part of a creditor is equivalent to *knowledg eor notice* resulting from the registry of such a title.

APPEAL from the Fifth District Court of New Orleans, *Eggleston*, J.
*G. W. Christy*, for plaintiff. *G. S. Lacy* and *R. A. Upton*, for defendant and appellant. *L. Charvet*, for warrantors.

Land, J. This is an hypothecary action, in which the plaintiff alleges, that on the 25th day of January, 1856, he obtained a judgment against one *J. H. Cruse*, for the sum of $931 38, and that on the 2d day of February, 1856, he caused his judgment to be duly recorded in the mortgage office of New Orleans. That on the 24th of July, 1854, the said *J. H. Cruse*, by public act of sale, conveyed and sold unto *George Moore*, the defendant, the undivided half of four certain lots of ground situate in the Second District of said city ; and that although said act of sale was executed on the 24th of July, 1854, the same was never registered in the office of the Register of Conveyances in said city, until the 4th day of December, 1856, and more than ten months after the registry of his judgment. And that, by reason whereof, he has obtained a lien and mortgage on said real estate, and that the same now stands hypothecated in law for the payment of his judgment, the interest thereon, and costs of suit.

The defendant's answer, admitting the purchase as alleged, contains a special averment, that at the time the plaintiff pretends to have acquired the mortgage and lien, he was well aware that he, defendant, had become the *bona fide* purchaser and owner of said property, for a valuable consideration, and that it is in bad faith on the part of the plaintiff, to attempt to exercise the lien claimed in his petition. The answer contains a further averment, that the non-registry of the act of sale was in consequence of the neglect of duty of the notary before whom it was passed, and calls in warranty the notary, and the sureties on his bond, and prays for judgment over against them, *in solido*, in the event of the plaintiff obtaining judgment against him.

Upon the issues thus presented by the pleadings, there was a judgment in favor of the plaintiff, and a judgment dismissing the call in warranty, from which the defendant has appealed.

Before considering the case on the merits, it may be observed that the *reality* and *good faith* of the sale from *Cruse* to the defendant, are not put at issue by the pleadings, nor called in question upon the evidence.

For the purpose of proving the fact of knowledge alleged in the answer, the defendant propounded interrogatories on facts and articles to the plaintiff, who

· 105

SWAN
v.
MOORE.

answered the second interrogatory as follows : " I have heard it said that *Moore* claimed this property ; at what time I heard this, I do not recollect, but it was about the time that a case was pending between *Johnson* and *Cruse*, and the property was in the hands of the Sheriff, so I understood, at the time I heard this report, I did not believe it. I have no recollection that I knew this previous to the 2d of February, 1856. I have no recollection that I was informed of this anterior to the month of February, 1856."

This answer is ambiguous as to the date at which the plaintiff received notice of the defendant's claim or title ; but by reference to the suit of *Johnson* v. *Cruse*, mentioned in the answer, we find that suit was commenced on the 14th of January, 1854, and the property was in possession of the Sheriff, under a seizure, on the 8th of December, 1855, nearly two months prior to the registry of the plaintiff's judgment, which was by *confession* subsequent to the seizure by the Sheriff ; and we also find, by reference to the suit of the defendant, *Moore*, v. *Hufly, Sheriff,* that he had judicially claimed, and that the Sheriff had been enjoined from selling the property now in dispute, prior to the registry of the plaintiff's judgment, on the ground of the defendant's ownership of the property seized. And as the plaintiff has referred in his answer to the suit of *Johnson* v. *Cruse*, and the seizure of the Sheriff, as facts or circumstances fixing the date at which he heard it said *that the property was claimed by defendant*, it is reasonable to presume, that he heard of the defendant's claim prior to the registry of his judgment on the 2d of February, 1856. His want of recollection is not a negation of the fact, which is rendered reasonably certain by the circumstances to which he referred in his answer. His want of belief did not impair the effect of the notice which he received of the defendant's title.

There are but two modes in which persons not present can acquire a knowledge of an unrecorded sale of real estate : first, by information from others of the fact, and secondly, by an examination or inspection of the act of sale itself. Whether the information is received from hearsay, or from inspection, the party may well be said to have a knowledge of the sale. Indeed, it is almost universally the case, that knowledge of an unrecorded title, or claim, is acquired from information, or hearsay, and if the plaintiff could free himself from the legal effects of notice, or knowledge of an unrecorded title, by saying, *that he did not believe it,* although he had heard it, then there would be but one mode by which his knowledge of the fact could be established, and that is, by evidence of his inspection of the act itself. This would be tantamount to holding that knowledge of the existence of a sale, not derived from the registry of the act, is without any legal effect. For a party who does not believe what he hears touching an unrecorded claim, or title to real estate, may decline to inspect the act of sale, and thus put himself beyond the reach of all notice of title, except that which results from the registry of the act itself. The plaintiff was informed of a fact which was true, and evidenced by a notarial act—but without any inquiry or investigation on his part, says, *that he did not believe it.* How, then, could notice of defendant's title have been brought home to him, except by registry, as he declined to inspect the act of sale, *if it be true* that his *incredulity* freed him from the legal effect of his knowledge of title derived from other persons ?

It has been held, that actual knowledge of a prior unrecorded title, is equivalent to notice resulting from the registry of the act, from whatever source such knowledge may have been derived. *Splane* v. *Mitcheltree,* 2 An. 265. It is well settled, that the formality of recording is for the purpose of giving notice to indi-

viduals, and that if a party have knowledge of that of which it is the purpose of the law to notify him, by causing an act or instrument to be recorded, the effect is the same, and he is as much bound by his knowledge, as if his information were derived from an inspection of the record. *Planters' Bank* v. *Allard*, 8 N. S, 144 ; *Rachal* v. *Normant*, 6 R. 88 ; *Robinett* v. *Compton*, 2 An. 846. In the cases of *Crear* v. *Sowles*, 2 An. 598, and of *Toulane* v. *Levinson*, ibid 788, on which the plaintiff's counsel relies as establishing a contrary doctrine, there was no proof in either case, that the creditor of the vendor had any knowledge or notice at the time he acquired his right of mortgage in the one case, by the registry of his judgment, or his right of privilege in the other, by the levy of his attachment, that the property of his debtor had been sold, and they are not, consequently, adverse authority to the cases cited. So true is this, that Chief Justice Eustis, who delivered the opinion of the court in the case of *Toulane* v. *Levinson*, and Judge Rost, who delivered the opinion in the case of *Crear* v. *Sowles*, concurred in the decision of the case of *Splane* v. *Mitcheltree*, which declared the doctrine of notice in relation to conveyances of real property to be a principle in the jurisprudence of this State.

It is however contended, that the doctrine of notice does not apply to creditors. In the case of the *Planters' Bank* v. *Allard*, 8 N. S., which is a leading case on the subject, the doctrine was fully considered, and it was declared to be a settled rule, that actual knowledge is equivalent to notice resulting from registry. And after reviewing the decisions of the court announcing the same doctrine, under the old Code, Judge Martin says : " These last decisions in construction of the old Code have not escaped the attention of the Legislature, and the spirit of them has been incorporated in Art. 2242 of the new Code." In the case of *Martinez* v. *Layton*, 4 N. S. 368, referred to by Judge Martin, as a decision under the old Code, it had been expressly decided that the doctrine of notice applied to creditors.

Article 2242 of our present Code is in these words : " Sales or exchanges of real property and slaves, by instruments made under private signature, are valid against *bona fide purchasers* and *creditors*, only from the day on which they are registered in the office of a notary, or from the time of the actual delivery of the thing sold or exchanged."

This Article of the Code, so far as it establishes the doctrine of notice, was not repealed by the Act of 1855, " relative to registry," nor by the Act " creating a Register of Conveyances for the Parish of Orleans," because the repealing clause in each of said acts excepts what is contained in the Civil Code on the same subject-matter. See Acts 1855, pp. 335, 345.

If Judge Martin and his colleagues were right in the conclusion, that the Legislature had established the doctrine of notice by the enactment of Art. 2242 of the Code, then it follows, as a necessary consequence, that *creditors* are as much bound by actual knowledge of a prior unrecorded title, as subsequent purchasers are,—for so the Legislature has expressly declared, and by the force of its will, has put the question beyond the reach of opinion or argument. But if these learned Judges were in error, and Art. 2242 be *repealed*, it remains to consider whether there be any decision of this court against the doctrine, as applicable to creditors, and if not, whether the doctrine is well founded in principle. The cases of *Crear* v. *Sowles*, 2 An. 598, of *Toulane* v. *Levinson*, ibid 788, of *Williams* v. *Hogan*, 2 La. 125, of *McManus* v. *Jewett*, 6 La. 541, of *Mary* v. *Lampré*, 6 R. 314, and of *Poydras* v. *Laurans*, 6 An. 772, decisions cited against the doctrine,

are but declaratory of our registry laws, as they are found in the statute books, the last case deciding that possession is not evidence of a sale not recorded. In none of these cases were there *allegations* and *proof* that the creditor had actual knowledge of the vendee's unrecorded title, before, or at the time he acquired his right of mortgage, or privilege. It is true that the *dictum* in the case of *Toulane* v. *Levinson* is sufficiently strong and broad to expunge from our jurisprudence the whole doctrine of notice in regard to *purchasers* as well as *creditors*, and that the same *dictum* is reiterated in the case of *Poydras* v. *Laurans*, but this *dictum* was not necessary to the decision of either of these cases, and has not, therefore, the effect of a judicial decision, nor the force of authority. Indeed, one half of the doctrine announced by the *dictum* in the case of *Toulane* v. *Levinson* was conceded, in the case of *Poydras* v. *Laurans*, to be against the decisions of this court.

The question under consideration is not, whether an unrecorded title is without effect as to third persons, for that is fully admitted, and our registry laws are so plain on the subject, that argument but obscures and clouds the text—but the question is, whether *actual knowledge* of an *unrecorded title*, on the part of a creditor, *is equivalent* to *knowledge* or *notice* resulting from the registry of the acts, for if this be so, *then the act of sale* is, in the eye of the law, *a recorded title*, in relation to the creditor having knowledge of its existence. As this question has not been decided in any of the cases referred to, under the Code of 1825, or the legislation subsequent thereto, nor in any case which has come to our knowledge, and as the *dictum* of a Judge, or what is said *in arguendo*, has never been regarded as having the force and effect of a judicial decision, the question is, therefore, an open one, and has to be considered and decided on legal principles.

We find that creditors and purchasers are put on the same footing by our registry laws, whether contained in the Civil Code, or in the Session Acts of the Legislature. We find that an unrecorded title is without effect as to purchasers, as well as creditors, and that a recorded title takes effect from the day of registry against creditors as well as purchasers, and that, consequently, the law has made no distinction between them as to the effect of notice, or knowledge, derived from the registry of an act of sale, or mortgage. Why should the courts make a difference between them, when the Legislature has made none? Cannot a creditor commit a fraud on the rights of a vendee, as well as a purchaser, and is not the former bound by the obligations of good faith, as well as the latter? If a creditor witnesses an act of sale, and afterwards acquires from the vendor a special mortgage on the property sold, and attempts to enforce it by virtue of a prior registry, against the property in the hands of the vendee, does he not thereby commit an act of fraud on the rights of the vendee? If a creditor is present when an act of sale is passed, and afterwards obtains a confession of judgment from the vendor, and causes his judgment to be registered before the act of sale is recorded, and subjects the property to the payment of his judgment, does he not thereby perpetrate a fraud upon the rights of the vendee? If a creditor has actual knowledge of a sale, from whatever source derived, and afterwards goes to the vendor, and acquires a special mortgage on the property, or obtains a confession of judgment, and records the former, or registers the latter, before the act of sale is recorded, and claims a right of mortgage on the property, does he not likewise commit an act of fraud on the rights of the vendee? If the doctrine of notice is not applicable to the creditor, he may do any or all of these acts, which have been held to be fraudulent, and without effect, as to the vendee, in the case

of a purchaser, who stands on the same footing with the creditor, in relation to the registry laws.

But, it may be said, that the want of *good faith* on the part of a creditor, in these instances, would prevent him from availing himself of the non-registry of the vendee's title. If so, then the same reasons which have induced the court to apply the doctrine of notice to a purchaser, exist in full force against a creditor. For, if the creditor is in *bad faith, what is it that constitutes his bad faith?* It is certainly *his knowledge* of the vendee's *unrecorded title*, because if the mortgage were acquired *without knowledge*, or notice, it would be a legal right under the registry laws, which could be enforced in good faith. His knowledge, therefore, of the unrecorded sale necessarily constitutes his bad faith—which knowledge is all he could derive from the registry of the act, and which is the whole object of the law in requiring the act to be recorded, and he therefore stands with a purchaser upon the same grounds, in relation to the vendee, whether his knowledge be derived from registry, or from other sources, and the *same law*, and the *same reasons* which have induced the courts to apply the doctrine of notice to *a purchaser, exist in full force against him.*

The right to purchase property and to record the title, is not less absolute on the part of a purchaser, than the right on the part of the creditor to sue, and cause his judgment to be registered; and the former could with as much legal propriety urge his right to purchase, as a reason why the doctrine of notice should not be applied to him, as the latter could his right to sue, and to cause his judgment to be recorded; and therefore, no distinction can be made between them on this ground.

The maxim of our law, that the property of the debtor is the common pledge of his creditors, does not affect the question, because a sale in good faith is as valid and binding, under the registry laws, against creditors, as purchasers, and whenever notice, under these laws, is binding on purchasers, it is also made binding on creditors.

If, on the other hand, it be said that a creditor, with actual knowledge of an unrecorded title, may acquire a special mortgage, or obtain a confession of judgment, from the vendor, and by virtue of a prior registry, subject the property to the payment of his debt, the consequences of such a position would be these: although the Legislature has enacted a registry law which places *creditors* and *purchasers* on the same footing of equality, as to the formality of the registry of acts of sale and mortgage, and as to the effect of the notice resulting therefrom, and has, in plain and unambiguous language, declared that a registry of title *as to purchasers*, shall be valid *as to creditors*, yet the law of registry applicable to purchasers is different from the law of registry applicable to creditors; that purchasers are bound by their actual knowledge of title, from whatever source derived, and, consequently, bound by the obligations of good faith, but that creditors are not. The first of these consequences, is a disregard of the legislative will, which places creditors and purchasers on a footing of perfect equality as to the effect of notice resulting from registry. The second consequence is at war with the first element of jurisprudence, which is, that all men should live honestly. If it is dishonest for a purchaser, with knowledge of the vendee's title, to defraud him by a subsequent purchase, it is equally dishonest for a creditor with knowledge *to acquire and enforce a mortgage on property which he knows does not belong to his debtor.*

Hence we conclude, that as the law has made no distinction between these two

classes of persons, as to the character and effect of notice resulting from registry, none can be made on principle; and that, if the doctrine is applicable to the one, it is applicable to the other.

It is, therefore, ordered, adjudged and decreed, that the judgment, as between plaintiff and defendant, be reversed; and it is now ordered, adjudged and decreed, that there be judgment in favor of defendant, with costs in both courts. And it is further ordered and decreed, that the judgment dismissing the call in warranty be affirmed with costs.

MERRICK, C. J., dissenting. The proof in this case is very far from showing, in my opinion, that the plaintiff had knowledge of a sale from Cruse to Moore, prior to the recording of his judgment. He says, he heard that Moore claimed the property, but he did not believe the report. So, too, as to the time; the property was under seizure for some months, and it might have been long after the mortgage was recorded, that Swan heard the rumor. But as my colleagues have found the facts adversly to the plaintiff on this branch of the case, I advert to it only to show, that I do not think the plaintiff can be charged with a want of good faith in pursuing the remedies which the law has given him. Cruse was the debtor of plaintiff for work and labor, much of which was done and furnished prior to the act of sale from Cruse to Moore. There is, therefore, just as much reason to charge Moore with having bought to defraud creditors, as to charge Swan with an intention of defrauding Moore, and I see no reason to charge either with bad faith. They are innocent persons, each endeavoring to avoid a loss. Swan seeks to render the property which his debtor held, when he furnished him with the work and labor, liable for his debt. Moore seeks to withdraw this property from the creditor to whom the law had given a sort of pledge, by Articles 3149 and 3150 C. C., and claim it as his own. Moore's money never went into Swan's hands, therefore, nothing estops Swan from pursuing his legal remedies and making that property, (on the faith of which the credit may be supposed to have been given,) responsible for his debt.

In the further consideration of the case, I shall consider as proven, as my colleagues have done, that Swan had heard of Moore's claim upon the property before he recorded his judgment. That Swan had seen the act of sale, or had any certain information of its contents, I do not hear contended.

It is supposed by a majority of this court, that the case is controlled by Art. 2242 of the Civil Code, and some decisions under it. The Article is under the title, OF ACTS UNDER PRIVATE SIGNATURE. It is in these words:

"Art. 2242. Sales or exchanges of real property and slaves, by instruments under private signature, are valid against bona fide purchasers and creditors only from the day on which they are registered in the office of a notary, or from the time of the actual delivery of the thing sold or delivered."

If this Article of the Code was the only law on the subject, as it was considered at the time when the decisions cited were rendered, there would be no reason to depart from them. But as the law itself has been radically changed, and new provisions and requirements added, and as the same court which rendered the decisions relied on, followed the new law, it seems to me no longer an open question. Indeed, I cannot see how the lawgiver can use more positive language in his enactments, or the courts could show a more willing obedience to his requirements.

The law with regard to the parish of Orleans, under the title of Register of Conveyances for the parish of Orleans, declares, sec. 27, that " Acts, whether

they are passed before a notary public or otherwise, shall have *no effect* against *third persons*, but from the day of being registered." Acts of 1855, p. 345.

By another Act, a similar provision is extended to the country.

" Sec. 14. It shall be the duty of the Recorder to endorse on the back of each act transmitted to him, the time it was received by him, and to record the same without delay, in the order in which they were received; and such acts shall have effect against *third persons* only from the date of their being deposited in the office of the parish Recorders."

Then, under the head of registry, the lawgiver says generally :

" Section 1. That *no notarial* act concerning immovable property, shall *have any effect* against third persons, until the same shall have been recorded in the office of the parish Recorder or Register of Conveyance of the parish where such immovable property is situated."

And in the last paragraph of the second section of the same Act, it is declared, that :

" *All sales*, contracts and judgments, which *shall not be so recorded*, SHALL BE UTTERLY NULL AND VOID, except between the parties thereto. The recording may be made at any time, but shall only effect third persons from the time of recording." Acts of 1855, p. 335.

This is the last expression of the legislative will upon the subject, and it is *clear, precise, and contains no exception or qualification.*

To me, the argument by which it is sought to be proved, that this last expression of the sovereign will is not obligatory and binding to its full extent, seems liable to many objections.

If I ask, did not the Legislature have the power to pass this law ? The answer from every quarter is, it did have the power. If I ask again, are not the precise, positive, and stringent provisions of this law, the will of the lawgiver ? There can, it seems to me, be but one answer : He would not have taken the pains to have expressed his will with such minuteness and enforced it by reiteration in other Acts, unless such had really been his will. As the lawgiver has the power, and such is his will; what is it, but the law ?

But it is said, the repealing clause of these statutes of 1855, does not repeal Article 2242 of the Civil Code. To this I reply, that it is not important to the decision of this case to decide, whether these Acts did or did not repeal the Art. 2242, for they are on a different subject. Art. 2242 relates to the registry of *acts under private signature* before the *notary*, doubtless in order to assure their dates.

These statutes are passed in order to give certainty, and publicity and perpetuity, to titles to real estate, and to furnish authentic evidence thereof, and the registry *of all acts notarial* or under private signature, is to be made before the *Register or Recorder*, and this difference must have been adjudged to exist, or the Act of 1810 could not have been held to survive the repealing Act of 1828.

Again, these statutes of 1855, are but a reënactment of the Acts of 1810 and 1827 (well known to the profession). According to the decision in the *Holmes* and *Wiltz'* case, their reënactment cannot be considered as destroying their former effect, and consequently their influence upon the Code.

But the repealing clause cannot bear the *construction* contended for. It is in these words, viz : " That all laws contrary to the provisions of this Act, and all laws on the same subject-matter, except what is contained in the Civil Code and Code of Practice, be repealed."

What is the object of a repealing clause? Is it not to abrogate all provisions of law inconsistent with the newly declared will of the sovereign power? Is it to do the strange and inconsistent office of declaring the statute just enacted repealed by a former law? Are the statutes of 1855 repealed by laws passed in 1825?

All subjects are presumed to know the law. Much more, therefore, must the lawgiver be presumed to know what he has previously prescribed as a rule of action, and it must be held, that the Legislature knew the provisions of the Civil Code and Code of Practice, which it had enacted and caused to be promulgated. It did not, therefore, solemnly exert the sovereign power to do an act which it knew would be entirely nugatory, or, in its own language, *utterly null and void*, because in conflict with other inconsistent provisions of the ancient law which it then and there determined to declare should stand.

The repealing clause is what it purports to be, A REPEAL. It repeals all laws inconsistent. It goes further, it repeals all laws on the *same subject-matter*, except what are contained in the Civil Code and Code of Practice. If the Judge finds anything inconsistent with this new expression of the legislative will anywhere, he must declare it repealed, because *lex posterior derogat priori*. And he is not to regard anything on the same subject-matter unless he shall find it in the Civil Code and Code of Practice.

Having thus shown, as I think, that the new statutes are in force, or, in other words, not repealed by the ancient laws, I now proceed to show that these statutes, before they were reënacted in 1855, were repeatedly recognized as the law by this court, and carried into effect. It is sufficient for the purposes of this opinion to show that they have been so regarded by this court, and if it has made one exception, it only proves the rule and does not weaken the present case.

The exception admitted by the court is the solitary case, where the conduct of a subsequent vendee, who has recorded his deed before a former vendee, has been fraudulent. Here the courts deprive him of the advantage gained by his fraud, probably on the ground that a party ought not to be permitted to avail himself of a statute made to prevent fraud, in order to commit a fraud. See *Splane* v. *Micheltree*, 2 An. 265.

Not long after the Act of 1827 was passed, the same court, which had decided the cases of *Martinez* v. *Layton*, 4 N. S. and *Planters' Bank* v. *Allard*, 8 N. S., gave effect to the latter statute, notwithstanding the previous decisions, and held that an attachment by a creditor, defeated a sale which had been made the preceding day by the debtor, to a third person, but not recorded. *Williams* v. *Hagan*, 4 L. R. 125. This doctrine was reaffirmed in *McManus* v. *Jewett*, 6 La. 541. In the case of *Brassac* v. *Ducros*, 6 Rob. 338, it was held, that the sale of property of the community by the husband could not bind the wife who subsequently renounced the community; that she was a third party and stood in the position of a creditor, and could only be bound by the registry of the act executed by her husband. The doctrine of this case was admitted in the case of *Stockton* v. *Briscoe*, 1 An. 249.

In the case of *Many* v. *Lampré*, 6 Rob. 314, the statute of 1827 was again considered, and enforced against a vendee with a recorded title, his vendor's deed not having been recorded prior to the judgment. This last case has been overruled by the case of *Stockton* v. *Briscoe*, 1 An. 249, so far as it applies to a case where the junior title is recorded, but not as to the necessity of producing a recorded title to some of the vendees.

In the case of *Crear* v. *Sowles*, it being a case of seizure under attachment, the court declares, in effect, that no case of notice can be made out against an attaching creditor, equal to registry, and, notwithstanding the notice, they maintained the attachment. 2 An. 598.

In the case of *Tulane* v. *Levinson*, the court says :

"It is in evidence that plaintiff's attorney before the issuing of the *fieri facias*, under which they became purchasers, was apprised of the existence of the act of sale to *Bartlette*, and of its being recorded in the mortgage office ; but that on finding no record of it in the office of the parish Judge, he had the lot seized and bought in for his clients, the plaintiffs. As we consider the right of the plaintiffs to have the property sold to satisfy their debt, paramount to that of the defendant, under his unrecorded deed, by virtue of their recorded judgment, we do not know how that right can be impaired by this knowledge on part of the attorney. The theory, that notice is equivalent to registry in relation to conveyances of real property, we do not understand to have been adopted in our jurisprudence. The subject is one of great interest, and by no means free from difficulty." 2 An. 789 ; 1 An. 80 ; 2 An 316 ; see also 4 Rob. 7 ; 2 Rob. 379 ; and 2 An. 610.

The doctrine of registry was again considered in the case of *Poydras* v. *Laurans*, 6 An. 772, and here Chief Justice Eustis, remarking upon the case before him, says :

" The counsel for the plaintiff has urged to the court the rule which obtains in England and most of the United States, that notice to a party constitutes such an equity as entitles him to protection. The statutes of England relating to the registry laws, which apply to certain counties only, as well as those of several of the States, are not similar to ours on the same subject. The decisions under those statutes, as to what will serve the holder of an unregistered deed, forms no part of our jurisprudence. Nor has the doctrine ever been recognized by this court, that possession under an act of sale, not recorded, was sufficient evidence of notice to creditors and subsequent purchasers to defeat the operation of the registry laws. In the case of *Toulane* v. *Levinson*, 2 An. 789, we said : ' The theory that notice is equivalent to registry, in relation to conveyance of real property, we do not understand to have been adopted in our jurisprudence.' " " The subject," continues the Chief Justice, " has been several times under consideration, and the difficulties attending every mode in which laws of that description have been carried into effect, in different countries, have been examined and weighed. The only cases in which there has been any exception to the effect of the registry of conveyances, are those of gross fraud on the part of purchasers." *Splane* v. *Micheltree*, 2 An. 265 ; *McGill* v. *McGill*, 4 An. 269.

After these repeated decisions of the court, it would seem needless to quote further authorities.

All I can say is, here are the statutes which are absolute, and there are the decisions recognizing their binding force. Why should we not follow them ? See also Bullard & Currys Dig. p. 603, and *Armstrong* v. *White*, 10 An. 609.