Statement of the Case.
MONROE, J.
In 1907 plaintiff purchased a small tract of land at a sale made by order of court in the succession of Emma Mc-Clelland, 'and, finding that defendant was occupying a parcel (consisting of about an acre and a half) included in the tract so purchased, brought this petitory action for its recovery. Defendant answers, alleging that he bought the parcel in question by notarial act from Emma McClelland on September 23, 1899, and has been in open possession as owner, and has paid the taxes, since that time; that “for some reason” the act was not recorded, but that he has recently (May 30, 1908) had it recorded; that there was, however, on record a plat of the tract owned by Emma McClelland, on which the parcel in question is shown as belonging to “Sam Wallace,” which should be “Sam Walker” (defendant herein); that said plat, with defendant’s possession, was sufficient notice of his title; that plaintiff purchased with full knowledge of the fact that respondent was in possession as owner; that the sale by which plaintiff pretends to have acquired is void for want of proper notice; that no sale was necessary, because the succession of Emma McClelland owed no debts; that the property was appraised at less than its value; and that there was no intention to sell the parcel in question, which was excluded from the inventory and advertisement. There was judgment in the district court in favor of defendant, which was affirmed by the Court of Appeal, and the writ of review has issued from this court at the instance of plaintiff. In the opinion of the Court of Appeal, it is conceded that defendant’s title was not recorded when plaintiff purchased the land, and the judgment of that court is based substantially upon the following grounds:
“That, if the plaintiff did not actually know that the defendant had claims against the property under a prior deed from Emma McClelland, it was because he did not choose to know it. The defendant * * * purchased the land in 1899, and went into possession of it. He has remained in continuous, open, and notorious *155 possession of it as owner. It was assessed to him, and he paid taxes on it in 1900 and each subsequent year. There was some confusion as to the quantity and identity of the land owned by Emma McClelland at her death. She had owned a much larger tract, and in 'one of the deeds the description of the property conveyed gave the land sold to defendant as one of the boundaries. Besides, there was an old map in the recorder’s office of the original tract, in which was designated the land in question as belonging to the defendant. Now, before he purchased the land, the plaintiff instituted an investigation of the documents in the recorder’s office, and went out and viewed the premises. Having done all this, he could not have remained in ignorance of the claims of the defendant to the property, tie could not shut his eyes to something [everything], except recorded conveyances, and now claim that he was in ignorance of the rights of the defendant, when the facts which lay patent before him were sufficient to indicate the existence of those rights. He saw the map, which was consulted by every one interested in ascertaining the quantity and identity of the particular part or parts of the original tract remaining to Emma McClelland [and which] designated the land in question as the property of the defendant; that a recorded deed gave the Sam Walker tract as one of the boundaries of the land conveyed, and that the old negro was in the actual possession of, and living on, the land. It would seem that the plaintiff purchased the land under the assumption that his rights could not be affected by the claims of the defendant or any other person, unless the evidence thereof appeared on the face of the public records. _ He overlooked the principal that actual knowledge of the existence of such claims was equivalent to registry. The laws of registry are designed for the protection of the innocent purchaser, who purchases land in ignorance of the rights of others. When he has actual knowledge or is charged in law with actual knowledge, he is not a purchaser in good faith, in the sense that he has no such knowledge, and hence is in no position to invoke the protection of those laws.”
The opinion then goes on to say that:
“The land, of which the land in question was purchased as forming part, was inventoried as the property of the succession at a valuation of $150; * * * that the administration was provoked by a person who had no real interest * * * when there was not, so far as shown on the face of the record, any real necessity for the administration; that the land was adjudicated to plaintiff for $100, though worth several times that amount; and that, with those facts before him, plaintiff did not hesitate to become the purchaser.”
The following documentary evidence offered on the trial in the district court has not been included in the record forwarded to this court, viz.; “Copy of deed from succession of Emma McClelland to L. M. Mc-Duffie” ; acts of sale (presumably from Emma McClelland) to “Dan Johnson,” to “Gold-bell Society,” and to “Allen”; act of sale from “Fred Dennis”; will of David Mc-Clelland (in favor of Emma McClelland); record in succession of Emma McClelland. The oral testimony given on the trial was, in substance, as follows, to wit: The attorney by whom the succession of Emma McClelland was opened, finding some difficulty in ascertaining what part of the original tract owned by her had been sold and what part remained, placed the matter in the hands of an “abstract company,” with instructions to make the research necessary to obtain that information, and the company caused the work to be done and the result to be embodied in a map or plat, which was made from the descriptions in the recorded deeds of the land that had been sold by Emma McClelland from thé time that she acquired the property until the map was made, which purports to show what parcels from the original tract had been thus sold and what part of the tract remained unsold, and fell into the succession, which includes the parcel here in question in the latter class, for the reason that the records of the conveyance office failed to show that it belonged to the former, and which map was used as the basis of the inventory, agreeably to which the sale was'made. The attorney referred to testified that he did not at that time know defendant, and it does not appear that he knew that defendant claimed title to any of the land which thus appeared to belong to the succession. The “old map,” referred to in the opinion of the Court of Appeal, appears to have been on file in the recorder’s office, hut by whom it was filed or for what purpose is not shown, though it may be inferred that it was filed in con *157 nection with gome one of the sales which had been made by Emma McClelland. Sam Mason, who did the work and made the map for the abstract company, testifies that he saw the “old map” (which appears to have been made by a surveyor named Barber), but paid no attention to it, because it did not appear to be correct. Plaintiff testifies that he never saw the defendant before he bought the land in question, and did not know and had never heard of defendant owning the parcel claimed by him, and that he was guided in making his purchase by a map which he employed a surveyor to make.
Being asked, “Did you make any effort to find out from the records what property you were buying?” he replied:
“No, sir ; I always buy from the sheriff’s office or anything like that. I asked Mason if this was the correct property, and he said he made an abstract, and that satisfied me.”
We fail to find any other testimony bearing upon the subject of his investigations or information.
Opinion.
It appears to be undisputed at this time that the parcel of land here claimed was included in the tract offered for sale, and adjudicated to plaintiff by order of court, in the succession of Emma McClelland; and, that being the case, it is immaterial for the purposes of the inquiry as to the validity of plaintiff’s title (in the absence of allegation and proof that the whole proceeding was a fraudulent scheme, concocted by him, or to which he was a party) whether the person at whose instance the succession was opened had an interest sufficient to authorize such action, whether an administration was necessary, or whether the property was over or under valued, since the fact that the order of sale was made (the jurisdiction of the court to make it being conceded), the purchaser of the property sold under such order cannot be affected by irregularities which may have preceded it. The acts of sale (presumably from Emma McClelland) to “Dan Johnson,” “Goldbell Society,” and “Allen,” and from “Fred Dennis,” were offered for the purpose of showing that Emma McClelland had sold certain parcels of land from the original tract to different persons according to the “Barber” map, which was placed on file or deposit in the office of the recorder, and that one or more sales had been made, either by her or by some one holding under her, according to a description or descriptions, which recognized defendant as the owner of the parcel herein in dispute, and, for the purposes of this opinion, it will be assumed that those facts are proved. It is not disputed that the copy of the deed from the succession of Emma Mc-Clelland to L. M. McDuffie offered in evidence by plaintiff is as described in the petition, and as there is no suggestion, either in the opinion of the Court of Appeal or in the brief of defendant’s counsel, that it was not registered prior to the registry of the sale upon which defendant relies, we will assume that it was so registered. The missing documentary evidence may therefore be dispensed with.
It is proved and admitted that the sale by Emma McClelland to defendant, though made in 1899, was not recorded until May 30, 1908, and we take it to be proved and admitted that the sale to plaintiff was made and recorded in 1907.
It can hardly be said that the Court of Appeal finds that plaintiff had actual knowledge of the defendant’s title at the time that he made his purchase. The judgment of that court is predicated upon the presumption that plaintiff knew that which (it holds) he might have known, or ought to have known. Thus the first paragraph of the opinion upon this branch of the case reads:
“However, a consideration of the facts and circumstances of the case has led us to the conclusion that, if the plaintiff did not actually know that the defendant had claims against the property under a prior deed thereto from Em *159 ma McClelland, it was because lie did not choose to know it.”
The “facts and circumstances” referred, to-are that defendant had been openly and notoriously living'on the property as owner for about seven years and had been paying the taxes; that Emma McClelland had sold other parcels of land from the original tract to different persons; that there had been filed or deposited or left in the office of the recorder a map or plat of the original tract upon which the parcels so sold were designated by the names of the respective vendees; and that defendant had examined or seen the map, and had visited and examined the property before making his purchase. Upon the other hand, the court finds that “the land, of which the land in question was purchased as forming part, was inventoried as part of the succession” of Emma McClelland, and was so advertised and sold by order of the court in which that succession was being administered. Plaintiff testifies that he did not know defendant, and did not know and had never heard that he was the owner of the property here in dispute, and there is no testimony to the contrary. He says that he was guided in making his purchase by a sketch which he had made by an engineer (who as we take it was guided in making the sketch by the inventory on file in the succession) and by the statement made to him by the representative of the abstract company employed by the attorney of the succession for that purpose, to the effect that the title had been examined and was all right. We are unable to find in the record any proof that plaintiff ever examined the “Barber” map, but, conceding that he did, the representative of the abstract company testifies that he saw it and paid no attention to it, because he found it incorrect, and he no doubt based his assurance to plaintiff that the map made by him and the inventory corresponding therewith were correct upon that belief.
On investigating the law applicable to the facts thus disclosed, it will be found that by Act March 24, 1810, c. 25, § 7 (3 Martin’s Dig. p. 140), it was provided that “no notarial act concerning immovable property has effect against third persons until the same shall have been recorded in the office of the judge of the parish where such immovable is situated;” that the Code of 1825 did not repeal that provision of the act of 1810, and hence that, under the Code of 1825, as under the pre-existing law (save in the parish of Orleans) sales of land not recorded as required by the section above quoted were held to be void as to third persons. Carraby v. Desmarre et al., 7 Mart. (N. S.) 663 ; Gravier et al. v. Baron et al., 4 La. 241; 2 Hen. Dig. p. 1300, No. 2.
There were, however, differences between the provisions of the Code itself upon the subject of the registry of notarial acts and of acts under private signature, and by a statute of March 20, 1827 (Laws 1827, p. 13G), it was declared that acts of transfer of immovables, not registered agreeably to law, whether passed before a notary or otherwise, should have no effect against third persons but from the day of their being registered. Under the law, as it thus stood, it was held by our predecessors in this court that an attachment of a slave levied before the registry of a previously executed sale should be sustained (Williams v. Hagan et al., 2 La. 122); that a recorded judgment and seizure thereunder took precedence of a prior but unrecorded sale (Mary v. Lampre, 6 Rob. 314); that a purchaser by notarial act of date April 11, 1845, not recorded until July 5th, could not hold the property against an attacking creditor of the vendor who made a seizure on July 2d, though the failure to record the sale was attributed to the neglect of the notary, who had promised to attend to the matter and had received the fee to be paid to the register (Crear v. Sowles, 2 La. Ann. *161 597); that a title acquired at sheriff’s sale in February, 1S43, and duly recorded, took precedence of a conventional sale, executed in March, 1842, and recorded in due time, not, however, in the office of the parish judge, but in the mortgage office (Tulane v. Levinson, 2 La. Ann. 7S7).
In other cases it was held (Justice Slidell dissenting) that a person in possession under a recorded title could not be affected by the fact that the title of his author had not been recorded. Stockton v. Briscoe, 1 La. Ann. 249; Buchanan v. Morgan, 7 La. Ann. 454. And there were still other cases which seemed to derogate from the force of the statutes as interpreted in the cases first cited; so that the jurisprudence of the state can hardly be said to have been in a satisfactory condition. In 1855, therefore, the General Assembly took the matters up, and passed the Acts Nos. 259 (page 320), 274 (page 335), and 285 (page 345), which (save certain provisions concerning slaves) were subsequently incorporated in the Revised Civil Code of 1870 under the title, “Of Registry,” as articles 2251 to 2200. Act No. 259 was entitled “An act relative to notaries in the city of New Orleans.” Act No. 2S5 was entitled “an act creating a register ■of conveyances for the parish of Orleans.” Act No. 274 was entitled “An act relative to registry,” and was of general application throughout the state. It has been incorporated in the revised Civil' Code as articles 2204, 2265, and 2266, with an addition (to the latter article) which will be noted. Section 1 of. the act (now Civ. Code, 2264) provides:
“That no notarial act concerning immovable property shall have any effect against third persons until the same shall have been deposited in the office of the parish recorder [an officer created by Act of 1846, p. 71, No. 104] or register of conveyances of the parish where such immovable property is situated.”
Section 2 of the act (now Civ. Code, 2265, 2266) provides' that all sales, marriagé contracts, etc., and final judgments affecting immovable property, “shall be recorded in the parish where the immovable property is situated,”' and that “all sales, contra'ets and judgments, affecting immovable property, which shall not be so recorded, shall be utterly null and void except between the parties thereto. The recording may be made at “any time but shall only affect third persons from time of the recording.” In the revision of the Civil Code in 1870 there appears to have been added to the act of 1S55 the following, which constitutes the last paragraph of article 2206, to wit:
“The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer.”
In the case of Swan v. Moore, 14 La. Ann. 833, the acts of 1855 thus referred to, as also certain provisions then contained in the Civil Code, were carefully considered, and a majority of the court (Merrick, C. J., dissenting) reached the conclusion that:
“Actual knowledge of an unrecorded title on the part of a creditor is equivalent to knowledge or notice resulting from the registry of such title.”
In the éourse of the opinion it was said:
“The question under consideration is, not •whether an unrecorded title is without effect as to the third persons, for that is fully admitted and our registry laws are so plain on the subject that argument but obscures and clouds the text, but the question is whether actual knowledge of an unrecorded title on the part of a creditor is equivalent to knowledge or notice resulting from the registry of the act, for, if this be so, then the act of sale is in the eye of the law a recorded title in relation to the creditor having knowledge of its existence.”
In reaching the conclusion stated, the court attached some Importance to article 2242 (now article 2246) of the Civil Code, which then read as follows:
“Sales or exchanges of real property and slaves by instruments made under private signature are valid against bona fide purchasers and creditors only from the day on which they are registered in the office of a notary or from the time of the actual delivery of the thing sold or exchanged.”
*163 That view of the matter was, however, controverted in the dissenting opinion of the Chief Justice, who, moreover, called attention to the fact that, as the laws were on different subjects, it was immaterial for the purposes of the case whether the article in question was repealed or not.
But the article 2242, to which the court referred, no longer exists, and the argument predicated on it, as it existed when the case cited was decided, has now nothing to rest on. To the contrary, it appears to have been altered by the revisers of the Code in order to meet that very argument and to reconcile any supposed difference between it and the act of 1855. It now reads as follows, to wit:
“Art. 2246 (2242). Sales or exchanges of immovable property by instruments made under private signature are valid against bona fide purchasers and creditors only from the day on which they are registered in the manner required by law.”
In Harang v. Plattsmier et a’l, 21 La. Ann. 426, the decision in Swan v. Moore, supra, was overruled, and the views expressed in the dissenting opinion of the Chief Justice were adopted. Thus it appeared that a defendant had executed two mortgages, which had not been recorded, and that he then executed a third mortgage, which was recorded, and in which the two preceding mortgages were referred to. The property having been sold, there was a contest between the different mortgagees over the proceeds, and this court said :
“The act of the General Assembly [referring to Act No. 285 of 18551 declares that acts ‘whether they are passed before a notary public or otherwise, shall have no effect against third persons but from their registry.’ Section 9. Another statute, No. 274, entitled ‘An act relative to registry,’ declares that ‘no notarial act concerning immovable property shall have any effect against third persons until the same shall have been recorded,’ etc. The second section directs how and where the acts shall be recorded and it provides, further, ‘that all sales, contracts and judgments which shall not be so recorded shall be utterly null aud void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of recording.’ Acts 1855, p. 835, No. 274. ‘This is the last expression of the legislative will upon the subject, and it is clear, precise, and contains no exception or qualification.’ Whether the laws be good or bad is immaterial. Courts are bound by them and must determine the rights of litigants in accordance with their provisions. The lawgiver, it would seem, was determined to settle the vexed question whether knowledge was equivalent to registry in Louisiana, and he declared that it was not. ‘All sales, contracts, and judgments which jShall not be so recorded shall be utterly null and void, except between the parties.’ It cannot be pretended that Weaver [the last mortgagee] was a party to the mortgages in favor of Baquié or Ilauek [the two preceding mortgagees]. They were therefore null as to him, and-could not affect his rights. We concur in the views expressed by Mr. Chief Justice Merrick in the dissenting opinion in Swan v. Moore, 14 La. Ann. 838.”
See, also, Carraby v. Desmarre, 7 Mart. (N. S.) 662.; Williams v. Hagan, 2 La. 125; Gravier v. Baron, 4 La. 241; McManus’ Syndic v. Jewett, 6 La. 541; Duplessis v. Boutte, 11 La. 342; Lee v. Darramon, 3 Rob. 160; Mary v. Lampre, 6 Rob. 314; Gradenigo v. Wallett, 9 Rob. 14; Prevost v. Ellis, 11 Rob. 56; Stockton v. Briscoe, 1 La. Ann. 249 ; Crear v. Sowles, 2 La. Ann. 598; Poydras v. Laurans, 6 La. Ann. 772; McGill v. McGill, 4 La. Ann. 269.
The law thus referred to, as the then latest expression of legislative will, was subsequently re-enacted in terms which emphasized the construction thus placed on it; article 2242 of the Code having been, as we have seen, altered in order to make it conform to the acts of 1855, and Act No. 274 having been amended by the addition of the paragraph :
“The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer.”
In Meyer & Bros. v. Simpson, 21 La. Ann. 591, plaintiffs enjoined an execution, claiming, under an unrecorded sale, to be the owners of the property seized, and it was held (quoting the syllabus);
“A sale of immovable property has no effect against third parties until it is recorded in the proper office in the parish where the property is situated.”
*165 In Lyons v. Cenas, 22 La. Ann. 113, it appears that defendant máde a seizure of property in New Orleans under a judgment obtained in West Feliciana in 1866, and that plaintiff enjoined, claiming to be the owner of the property by virtue of an unrecorded succession sale made in 1854. It was held (quoting the syllabus) that:
“A proeés verbal of the sale of real estate, by order of the probate court, has no effect against third parties or seizing creditors until it is recorded or registered in the parish where the property is situated.”
In the case cited the court, went on to say:
“There is no pretense that defendant had any knowledge of plaintiff’s title, and hence it is unnecessary to decide what effect such knowledge might have.”
In Rochereau v. Dupasseur, 22 La. Ann. 402, it was held that a mortgage loses its rank if not reinscribed within 10 years; that a recital in a subsequent mortgage, granted before the 10 years have expired, that the former mortgage has been inscribed, will not operate a reinscription of such former mortgage ; and that the fact that the second mortgagee had notice of the existence and inscription of the first mortgage would not relieve the first mortgagee of the effect of his failure to reinscribe his mortgage. The court said (inter alia):
“In the case of Harang v. Plattsmier, 21 La. Ann. 427, we held that knowledge is not equivalent to registry in Louisiana, but that under the law as it now stands, which must control articles 3315 and 3316, if inconsistent, an unrecorded act of mortgage is utterly null and void, except between the parties to the act, and we have concluded to adhere to that ruling.”
And to the same effect are the decisions in Levy v. Mentz, Sheriff, 23 La. Ann. 261; Succession of Simon, 23 La. Ann. 533; Doughty v. Sheriff, 25 La. Ann. 290; Villavaso v. Walker, 28 La. Ann. 777; Miltenberger & Co. v. Dubroca et al., 34 La. Ann. 313, in. which last-mentioned case the court said:
“So far as third persons are concerned, mortgages derive their effect, not from the mere convention of the parties, but from compliance with the laws of registry, and nothing can dispense from a strict observance thereof.”
In Meyer v. Fountain, 34 La. Ann. 987, it was held that:
“An adjudicatee at a tax sale cannot recover in a petitory action from purchasers of the same property at a judicial succession sale where no tax deed is recorded at the date of the probate sale.”
In Bank v. Ice Co., 105 La. 133, 29 South. 379, it was held (quoting from the syllabus) that:
“Whilst it is true that quoad the vendor and vendee immovable property may pass beyond the control of the former by reason of an unrecorded sale, the proposition does not hold good as to third persons who are creditors of the vendor, and the property remains subject to seizure by them until the sale is recorded. In such case the courts will take notice of the fractions of a day and a recorded seizure will take precedence of a recorded sale, if the difference in time can be ascertained by proof.”
In Baker v. Atkins & Wideman, 107 La. 490, 32 South. 69, it was held (quoting from the syllabus) that:
“Where A., who is the owner of real estate by undisputed title, sells the same to B., and B. fails to record his title, the judgment creditors of A. can acquire judicial mortgages on such property by recording their judgments after the date of such sale and before its registry. And in such case the judicial mortgages recorded against A. prior to the registry of the sale prime all such mortgages recorded against B., whether the latter were recorded before or after the sale.”
It is evident that whether a person acquires an interest in real estate to the extent of its value or part of its value as a mortgagee or as a vendee the principle involved in the application of the law of registry is the same; and hence if it be true that one may acquire a valid first mortgage, though he know at the time that as between the mortgagor and another there already exists an unrecorded mortgage upon the same property, it must also be true that one may acquire a valid title to such property, though he know that as between his vendor and another an unrecorded title has already been *167 passed. The law makes no distinction between mortgages and sales or between creditors and vendees or mortgagees; nor does it discriminate between those who acquire property with knowledge of unrecorded contracts and those who acquire without such knowledge. Its purpose is to establish and enforce as a matter of public policy upon the subject of the most important property right with which it deals the rule that unrecorded contracts affecting immovable property “shall be utterly null and void, except between the parties thereto.” No language could be plainer or more emphatic, and the courts have no more power to read into the rule established by it an exception, not contained in it, than they would have to read such an exception into the rule that a verbal sale of immovable property shall not affect third persons. It is true that “fraud cuts down everything,” and, if it were alleged and proved in a given case that a mortgagee had been induced by fraudulent representation or device to leave his mortgage unrecorded or to abstain from reinscribing it, or that a vendee had been so induced to leave his title unrecorded and that loss had thereby resulted, such mortgagee or vendee would no doubt be granted relief as against the perpetrator of the fraud. But it -cannot be said that one perpetrates a fraud who merely treats as utterly null and void a contract which the law in terms declares “shall be utterly null and void.” To hold such doctrine is necessarily to hold that one who knows a particular contract to be denounced by the law as utterly void is bound in spite of the law to respect it as valid and binding, a paradox to which a court of justice would be unwilling to commit itself as an interpretation of law. Beyond that, as appears from the statement which precedes this opinion, the plaintiff herein is not shown to have had actual knowledge when he purchased the property in question of the title thereto which the defendant sets up, and it is not easy to see how the “facts and circumstances” to which our learned brethren of the Court of Appeal refer (even assuming that -he was informed of them all, which does not appear to us to be proved) can be said to bring such actual knowledge home to him. It is not pretended that he ever saw defendant’s title deed until it was filed in court on the trial of this case or that he had ever until after he had purchased the property seen the defendant. More than that, he testifies, and no one attempts to contradict him, that he did not know, and had never heard, that defendant claimed to be the owner of the property. It does not appear except by inference (not a necessary one) that he knew that defendant was living on the property which he expected to be included in his purchase, or that he ever saw or knew of the “Barber” map. But if he knew that defendant was living on the property, and if he saw the “Barber” map, he was not obliged to conclude that defendant was or claimed to be the owner of the property, since he was assured to the contrary by the representative of the abstract company, which company, as we suppose, is engaged in the business of examining and reporting on titles to real estate, and, having been employed for that purpose by the attorney of Emma McClelland’s succession, had reported that the title to the parcel in question was vested in that succession.
It may be here remarked, however, that long before it was so declared in the case of I-Iarang v. Plattsmier, supra, it had been held by this court that knowledge, unaccompanied by fraud, was not equivalent to registry in Louisiana. Thus in Crear v. Sowles, 2 La. Ann. 508, Mr. Justice Rost, as the organ of the court, said:
“Registry laws ought not. to be so interpreted as to enable third persons to commit frauds upon bona fide purchasers. But fraud is not alleged in this case. The fact of knowledge o£ *169 the transfer by the defendant is not even put at issue, and is only mentioned in the affidavit made, to obtain a new trial. If it had been, knowledge by itself is not a badge of fraud, The defendant may well have believed that the sale was simulated, and, if it was, he was justified in treating it as a nullity.”
And, in Tulane v. Levinson, 2 La. Ann. 788, Chief Justice Eustis, speaking for the court, said:
“The title to the lot being in the name of Barney on the public records, it became, subject to the mortgage which the recording of the judgment created on May 3, 1842,' and w-e think could be lawfully seized under the execution issued on the judgment and sold to satisfy the same. It seems to follow as a necessary consequence that, if it could be lawfully sold under this state of things, a purchaser, having know-ledge of the facts, would be justified in buying the property. It is in evidence that the plaintiffs’ attorney before the issuing of the fieri facias under which they became the purchasers w-as apprised of the existence of the act of sale to Bartlett, and of its being recorded in the mortgage office, but that, on finding no record of it in the office of the parish judge, he had the lot seized and bought in for his clients, the plaintiffs. As we consider the rights of the plaintiffs to have the property sold to satisfy their debt paramount to that of the defendant under his unrecorded deed by virtue of their recorded judgment, we do not see how that right can be impaired by this knowledge on the part of their attorney. The theory that notice is equivalent to registry in relation to conveyances of property we do not understand to have been adopted in our jurisprudence. The subject is one of great interest and by no means free from difficulty.”
As we have already noted, it was held in the ease of Harang v. Plattsmier that the difficulty thus referred to had been solved by the General Assembly in the passage of the acts of 1855. Said the court in that case:
“The lawgiver, it would seem, was determined to settle the vexed question whether knowledge was equivalent to registry in Louisiana, and he declared that it was not.”
For {he reasons thus given, we are of opinion that plaintiff should have judgment as prayed for. It is therefore ordered, adjudged, and decreed that the judgments herein rendered by the Court of Appeal and by the district court be avoided and annulled, and that there now be judgment in favor of the plaintiff decreeing him to be the owner, entitled to possession, of the parcel of ground described in the petition as the—
“East half of the east half of the southeast quarter of section 14; township 17, range 14, beginning at the southeast corner of the east half of the east half of the southeast quarter ; thence, north, thirty-two and seventy two one hundredths (32.72) chains from place of beginning; thence, west, 300 feet to lands of W. M. Taylor; thence, north, 3.16 chains to lands of Savannah Wells; thence, east, to the east line of the east half of the east half of the southeast quarter; thence, south, along said line to the place of beginning.” ■
It is further decreed that defendant pay all costs.