URSIN PREVOST and others *v.* RICHARD G. ELLIS.

To make out a title by prescription, such as will authorize a recovery in a petitory action, where possession has been decreed to be in the other party, plaintiffs must, at least, show clearly that, before possession was decreed to their adversary, they held peaceable, public, continuous, uninterrupted and unequivocal possession, a sufficient length of time, under a just title, with proof of the exact commencement of that possession. C. C. 3452, 3453.

The seventh section of the act of 25th March, 1810, requiring notarial acts concerning immovable property to be recorded in the office of the parish judge where the property is situated, was not repealed by the promulgation of the Civil Code. Under that act, contracts of sale of real property, not recorded, are void as to third persons.

As a general rule, an act under private signature has no date as to third persons ; but a date may be given to it by facts *dehors* the act, as by proof of the death of the person in whose hand-writing it is shown to have been drawn up, or of a subscribing witness.

Proof, by a subscribing witness, that an act of sale of real property *sous seing privé,* was signed and executed on the day of its date, is insufficient to give it effect from its date, as to third persons. Parol evidence is admissible only to prove the date of the act, as between the parties.

A witness holding other property under a title through which the party offering him claims the property in litigation, has an interest in the question rather than in the case ; and any objection on that account goes to his credit, and not to his competency.

APPEAL from the District Court of Terrebonne, *Deblieux,* J.

*Bodin,* for the plaintiffs.

*Beatty* and *C. A. Johnson,* for the appellants.

BULLARD, J. The tract of land, the title to which is in contro-

versy in this case, is the same which formed the object of a possessory action between the same parties, which was decided by this court at the July term, 1841, in favor of the present defendant. See 19 La. 251. Thereupon the defendants in that case, now plaintiffs, instituted the present petitory action.

The plaintiffs assert title to a tract of land of forty *arpents* front, by a depth of forty on both sides of the bayou Grand Caillou, in the parish of Terrebonne, bounded below by lands of Guillaume Darbonne, and above by land now possessed by Thomas Butler, which their ancestor, Joseph Prevost, *dit* Collette, purchased of one Robert Brazil, by public act of sale passed in the county of Attakapas, before Louis De Blanc, then a justice of the peace, who was generally reported to be a notary, and exercising the functions of one, before two witnesses, dated the 12th of May, 1806, at which time he took possession. They represent that he remained in possession until his death, and that they, the plaintiffs, his heirs, have possessed the same in good faith, publicly and peaceably, as owners, for more than thirty years. In a supplemental petition, they allege ownership by the prescription of twenty years.

The defendant, in his answer, sets up title to a tract of land of thirty-six *arpents* front, on one side of the bayou Grand Caillou, in the parish of Terrebonne, by eighty in depth, and on the west side of eleven and a third *arpents* front, by the same depth, being a part of the tract of eighty *arpents* front, by eighty in depth, on both sides of the bayou, originally granted to Charles Jumonville De Villiers. He purchased from one Hutchins, who had previously purchased of Cocke, and it is admitted that there is a regular chain of conveyances from the grantee Jumonville De Villiers to the present defendant.

The record contains the copy of the original inchoate title of Jumonville, for a tract of eighty *arpents* front, by eighty in depth, on both sides of the bayou Grand Caillou, bounded below by the *ancien campement de Darbonne*, and a survey by Pothier, in 1804. This title is shown to have been confirmed and located by the United States; and the township plats, and other evidence in the record show, that it covers the land in controversy. The lower boundary of the Jumonville tract, as shown by the survey

by Pothier, is from eight to ten leagues from the gulf of Mexico, and as it has been located by the surveying department of the United States, it is proved to be distant twenty-eight miles. The two surveys correspond as to the point of beginning.

It is, therefore, quite clear, that the defendant has shown title in himself, derived from the Spanish government, and confirmed and located by the United States, to the land claimed and occupied by him.

On the other hand, the sale from Robert Brazil to the plaintiffs' ancestor, is an act under private signature, never recorded until 1842, for forty *arpents* front on each side of the bayou Caillou, bounded below by the land of Guillamme Darbonne, and above by public lands. The plaintiffs neither show any primitive title out of the domain in favor of Brazil, nor do they connect his title with that of Jumonville De Villiers. They rest their hope of recovering in this action upon the prescription of ten or twenty years, as alleged in their supplemental petition.

In order to succeed in making out a title by prescription, when out of possession themselves—such a title as would authorize their recovery as plaintiffs in a petitory action, the plaintiffs must, at least, show clearly, that before the possession was decreed to their adversary, they held peaceable, public, continuous, uninterrupted and unequivocal possession a sufficient length of time, under a just title, with proof of the exact commencement of that possession. Civil Code, arts. 3452 and 3453. We say *at least*, because in general the prescription *acquirendi causa* avails only the possessor as an exception, and a bar to a petitory action instituted by the true owner, thereby giving effect to a title *a non domino*, accompanied by long possession, in good faith. But such a title would be sufficient to evict a possessor without an anterior title, yet all the above qualities of the previous possession must concur. Such an action was known to the Roman law under the name of *actio publiciana*. It was allowed in favor of one, who, having possessed in good faith and in virtue of a just title, had lost possession before his prescription was fully acquired; and might be maintained against one either without title, or at least one less valid and apparent. Duranton gives an example of this kind

of action. " Paul m'a vendu et livré un fonds dont il n'était pas propriétaire, et que je croyais lui appartenir : avant d'en avoir prescrit la propriété, j'en ai perdu la possession par une cause quelconque : un tiers s'en est emparé *sans* titre, ou parce que ce même immenble lui a été vendu et livré par Paul depuis l'achat fait par moi. Je ne suis pas, il est vrai, propriétaire, puisque Paul qui me l'a vendu et livré, ne l'était pas lui même, et que je n'ai point encore prescrit : or, en principe, il faut étre propriétaire, et prouver qu'on l'est, pour pouvoir exercer la revendication avec succès. Néammoins je dois être préféré, et je. puis agir par revendication, comme si j'avais prescrit ; ce qui me serait surtout fort utile si je ne pouvais recouvrer la possession, soit parceque j'aurais succombé au possessoire, soit parce que j'aurais laissé écouler le délai utile pour agir par cette voie." 4 vol. No. 233. 1 Zacharie, Droit Français, p. 470.

The same doctrine is laid down by Pothier, in his Treatise De Droit de Propriété, Nos. 292, 293, and was alluded to and considered in *Bedford* v. *Urquhart* 8 La. 244.

Even this equitable action required all the qualities of good faith, just title, and open, public, and quiet possession, which would be necessary to repel an action against such possessor, instituted by the true owner, if he had not lost his possession.

But the present action is not exactly of that character. On the contrary, the plaintiffs contend that when they lost their possession, they had already acquired a better title than the defendants, by prescription. What are the facts in reference to possession ? No possession by Brazil is shown, and none by the plaintiffs, until 1807 or 1808, although the sale by Brazil to their ancestor, purports to bear date in 1806. That possession was of a very insignificant part of the whole tract, without any survey, and without even recording in the parish in which the land lies the act of sale. Such a possession cannot be said to be unequivocal. In the case of *Gravier et al.* v. *Baron et al.*, the court said that, under the act of 1810,* a contract of sale not

---

*The act of 24th March, 1810, provides :

Section 7. No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been recorded in the office of the judge of the parish where such immovable property is situated. 2 Moreau's Digest, p. 286.

Prevost and others v. Ellis.

recorded is, in relation to third persons, considered as void. 4 La. 241. The act of 1810 requires even notarial acts to be recorded in the parish where the land is situated; and this law was held not to be repealed by the Civil Code, in *Carraby* v. *Desmarre*, 7 Mart. N. S. 661.

Thus it appears that the time at which the possession began is left vague; that the taking of possession was accompanied by no act showing that it was taken as owner, with pretensions to a large extent of land beyond the spot actually occupied, such as running out the lines by a surveyor, or recording their evidence of title for the information of the public. The plaintiffs, with a possession thus limited and equivocal, do not appear to have made any opposition to the location of the Jumonville title so as to embrace their improvement, much less to have obtained from the government any recognition of their title under Brazil. If such a possession be not, strictly speaking, clandestine, it is not, to say the least of it, such as to put the true owner on his guard; especially as it is wholly unconnected with any previous possession by Brazil, the plaintiff's vendor, who, for aught that appears, never had any title or possession at all.

As a general rule, an act under private signature has no date as to third persons; but a date may be given to it by facts *dehors* the deed, such as proof of the death of the person in whose hand-writing it is shown to have been drawn up, or of a subscribing witness. But proof by a subscribing witness that it was signed and executed on the day it bears date, does not suffice, in our opinion, to give it effect from its date as to third persons. Parol evidence was, therefore, admissible only to prove the date of the act as between the parties thereto; but the rejection of it, as shown by the bill of exceptions, could not have any influence on the decision of this cause.

The testimony of Butler was objected to on the score of interest, holding himself a large tract of land under the title of Jumonville. This shows rather an interest in *the question*, than in the cause, and the objection goes to his credit and not to his competency; and the court did not err in admitting his testimony.

It appears from another bill of exceptions that the plaintiffs offered to prove by witnesses, that when Hutchins took posses-

sion, in 1829, he was notified of the title of the plaintiffs, and that he asked permission to remain there for one or two years and make a crop, and promised that all the improvements he would make should be for the benefit of the plaintiffs, and that he would never take advantage of his possession. This evidence was objected to on the ground, that the question of possession had already been definitely settled between the parties. We are of opinion that the court did not err. Such evidence could have no influence in a question of title, and the right of possession had been already decided.

Upon the whole, we are of opinion that the plaintiffs have failed to make out a better title than that of the defendant.

It is, therefore, ordered and decreed, that the judgment of the District Court be reversed; and it is further adjudged and decreed, that the defendant be quieted in his title to the tract of land described in his answer, against the pretensions of the plaintiffs, and that the appellees pay the costs in both courts. *

---

*Bodin, for a re-hearing. The plaintiffs claim as owners, although the derivation of their title is *a non domino*, for they claim in virtue of that mode of acquiring which the interest of society at large has caused to be preferred to all other modes, and which the law causes to triumph over the true owner of the thing.

But is it only when the true owner attacks the possessor, that prescription may be opposed to him ? Or, will prescription, *once acquired*, be always a victorious means of attack as well as of defence ?

Our Code (article 3420) says, "that prescription is a means of acquiring." Article 3422 teaches, that "prescription, by which debts are released, is a peremptory and perpetual bar to every species of action, real or personal;" while, on the contrary, article 3421 declares, "that prescription by which property is acquired, is *a right* by which a mere possessor acquires the property of a thing."

Then the question presents itself, shall that acquisition be valid and available only during possession ? If so, the provisions of the Code which immediately follow would be made to mean, that the possessor, after ten and twenty years, shall be able to repel the action of the true owner, and not that the thing is acquired after ten and twenty years. Article 3442 would be made to mean, that he who has a title to an immovable shall prescribe the possession, and not the property of it against the true owner.

Again, article 3444 would not provide, "that the property in slaves is acquired by five years." Thus the whole text of our laws on prescription conveys the idea of an acquisition, not of a mere means of defence.

If the property be once acquired and the right to it exists by virtue of the law, no title deed can prevail against it. The law alone must declare in what man-

ner shall be destroyed the right which it has established. And as that right, when once acquired, is stronger than the claims of the true owner, he will stand in no better condition than any other person, if the thing acquired by prescription should be in his possession.

Such is the doctrine of Justinian, adopted by Pothier, and by all the authors who have treated of the matter. It is not the *actio publiciana*, but the action in revendication of the property, of which prescription has made him the owner, even against the former true owner, though armed with the true title.

The *actio publiciana* was resorted to only in the cases where the possessor, whose prescription (usucapion) was only commenced, claimed the possession against an usurper who had no title. Duranton speaks of it incidentally, as well as Pothier, in treating of the rights of property. The position of the parties in this case does not require the consideration of the principles which govern that action, a pure fiction in the Roman law, tending to operate the very reverse of the civil effects of *usucapion*. Ducaurroy, Inst. vol. 2, p. 315.

The question being then decided according to the doctrine of Justinian, there remains to be examined the character of the title upon which was based the prescription of ten and twenty years, pleaded by the plaintiffs. And this leads us to the consideration of the second motive for which we think it our duty to solicit a revision of the judgment.

The validity of the act *sous seing privé*, presented as the origin of the plaintiffs' title, was examined only collaterally in the discussion of the qualities of our possession.

Why should the two elements of our right of action be weighed together? Should the weakness of one prejudice the other, and the conditions wanting in the last be visited on the first? It is clear that unless the two questions are kept distinct, the court will be liable to fall into one of those errors to which it is exposed by the viciousness of the system by which questions of fact, as well as of law, are to be decided by the same judge.

In considering the conditions of the plaintiffs' possession of twenty years, the court throw into the balance the supposed irregularities of their act of sale. It is thus that it declares the character of their possession to be *equivocal*, because that possession comprehended but a small portion of the land, without any survey, and without the recording of their title in the office of the parish judge, conformably with the act of 1810.

"That possession," says the court, "was of a very insignificant part of the whole tract, without any survey, and without even recording in the parish in which the land lies the act of sale. Such a possession cannot be said to be unequivocal. In the case of *Gravier et al.* v. *Baron et al.*, the court said that, under the act of 1810, a contract of sale not recorded is, in relation to third persons, considered as void. 4 La. 241. The act of 1810 requires even notarial acts to be recorded," &c.

Is it not evident that if the court had first examined the act of sale, and found it sufficient to prescribe under the prescription of ten and twenty years, it would not have reduced the extent of the possession, because then it would have been fixed by the title (Civil Code, art. 3464); and would not have destroyed its char-

acter by requiring its registry with the parish judge, whilst its date is anterior to any law requiring the record of titles ?

A direct examination of the title would have led the court to a very different result, as to its value. The provisions of the law of 1810, which require the recording of acts, and even those of the Code of 1808, respecting acts under private signature, are posterior to the sale from Brazil to Prevost, and cannot have any retroactive effect. The law of 1810 disposes only for the future, as well as the law of 1827 creating the office of Register of Conveyances for New Orleans, and no one has ever had the idea of causing to be registered in that office, acts passed before 1827.

But it will be said, the date of the act of sale is itself uncertain, because the testimony of one witness does not suffice to establish its date with regard to third persons.

If the act of sale be examined apart from all consideration of the other facts of the case, it will be perceived that even admitting the principle (perhaps a forced one) that the testimony of a single witness to an act *sous seing privé* cannot give it a date with regard to third persons, there were proofs *dehors* the instrument itself which could establish its date with precision; such as the fact that one of the witnesses was dead, and that the time of his death may be ascertained. If the court should think the proof of this fact necessary for the plaintiffs, as it is evident that they will be able to establish it, why not remand the case to the inferior court, or enter a judgment of non-suit against them ? Is not this the rule which law and equity calls for, and which has always been applied in similar cases ?

But another circumstance that strongly supports this act is, that it was passed before Louis De Blanc, a justice of the peace.

No doubt this magistrate had not the official capacity to give to the act an authentic character; but the fact that he has signed it, being a justice of the peace, furnishes an extrinsic proof of its date, for, upon referring to the archives of the State, we find that Mr. De Blanc ceased to be a justice of the peace, in September, 1806; and the act is dated, May, 1806. This circumstance is *dehors* the act itself, and establishes that the act of sale was anterior to September, 1806.

The proof of the official character of Mr. De Blanc, and of the time during which he held his commission, need not appear in the record. The court may take cognizance of it, as was decided in 3 La. p. 436.

The moment that the date of the plaintiffs' title shall be established, it will be entitled to full faith and credit. It recites that the Prevosts were already in possession at the date at which it was passed. Other testimony corroborates this fact.

The plaintiffs' title being acknowledged as a sufficient basis to prescribe under, (for the court seem disposed to admit the doctrine of Toullier, vol. 8, No. 239, and of Pothier, in his treatise on Prescription, No. 99, and to concede that an act under private signature can serve as the basis of the prescription of ten and twenty years,) they are dispensed from proving ownership in their authors, and of showing a regular chain of title from the first and true owner of the thing. For,

as says Ducaurroy, *loco citato*, the *usucapion* dispenses with all these proofs, because it confers on the possessor a right independently of that which his predecessors may, or may not have had.

" If such possession be not clandestine," (says the court, after having shown that the plaintiffs' act had not been registered,) " it is not, to say the least of it, such as to put the true owner on his guard ; especially as it is wholly unconnected with any previous possession by Brazil, the plaintiffs' vendor, who, for aught that appears, never had any title or possession at all."

The plaintiffs cannot be reproached for not having shown a title from their author, for they indirectly admit that their title is *a non domino*, but allege that it is sufficient under the prescription of twenty years.

The plaintiffs are entitled, at least, to the small portion of land actually occupied by them for more than thirty years, and of which they heve not been deprived by the possessory action.   The judgment has not noticed that part of their claim, and the decree seems to bear on the whole tract.

*Re-hearing refused.*