## ANN W. WINSTON et al. v. JOSEPH PREVOST et al.

The proof of the loss of an instrument, which authorizes the introduction of secondary evidence, must depend upon the particular circumstances of each case; but in all cases it must be such as to satisfy the mind that no better evidence is within the reach of the party offering secondary evidence.

A presumption as to the contents of a lost act of sale, sustained by an open, peaceable, and long-continued possession in conformity with it, might be sufficient, when it would not be against an adverse possession of forty years.

Where the party in possession holds under a private act of sale, it is not essential that the act should be recorded to show the extent of the possession under it. The possession alone is sufficient to put adverse claimants upon inquiry as to the extent of the possession.

APPEAL from the District Court of Terrebonne, *Randall*, J. *J. C.* and *A. Beatty*, for plaintiffs. *A. R. Splane* and *J. J. Roman*, for defendants. The judgment of the court was pronounced by

ROST, J. This is a petitory action. The defendants have pleaded title, and also the prescriptions of ten, twenty and thirty years. There was a verdict and judgment in their favor, and the plaintiffs appealed.

On the 6th of April, 1829, *H. C. McNeil* sold to *Samuel L. Winston*, whom the plaintiffs now represent, thirteen and a half arpents of land front on the Grand

Caillou by eighty arpents in depth. *McNeil* had acquired this land from *James Bowie*, on the 19th December, 1827. *Bowie* had acquired it, with other lands, at a forced sale of the property of *John Gravier*, made on the 17th March, 1827. *John Gravier* had acquired it from *F. Pothier*, on the 30th April, 1818. The act of exchange by which it was acquired, contains a declaration that *Pothier* exhibited and delivered to *John Gravier* a private act of sale of this land from *Jumonville Devilliers* to him. *Devilliers* held for it, at the time, an inchoate Spanish grant, which has since been confirmed by the Government of the United States. The sale from *Devilliers* to *Pothier* is wanting to complete the chain of the plaintiff's title, and our first inquiry must be as to the sufficiency of the evidence adduced to supply its place.

The record contains a written statement by the plaintiffs' counsel, which was received in evidence, and is to the following effect: That on being employed to bring this suit, he commenced a search to trace the chain of title from *Winston* to the grantee. He then goes on to describe several unsuccessful searches made by him for the sale from *Devilliers* to *Pothier*, and finally states, that he applied to *R. E. Butler*, executor of *R. G. Ellis*, who had bought a part of the *Devilliers* claim, to ascertain if this act was not among the title papers delivered to *Ellis* by his vendor; that all the papers in *Mr. Butler's* possession were handed to him; and from a memorandum found among them it appeared that the private act referred to in the exchange between *Pothier* and *Gravier*, had been once submitted to the inspection of *Charles M. Conrad*, for his opinion on the title.

*Mr. Beatty* states, that he then applied to *Mr. Conrad* to ascertain whether that paper was still in his possession, but that *Mr. Conrad* was unable to find it, or to inform him what had become of it.

The plaintiffs rely upon the statement in the act between *Pothier* and *Gravier*, to establish the existence of the private act; and upon the proof of its loss, deduced from *Mr. Beatty's* statement, they offered as secondary evidence, to supply its place and complete their chain of title, a notarial act between *Devilliers* and *P. B. Cocke*, having reference to other lands covered by the same grant, in which *Devilliers* recognized that he had previously sold the land in dispute to *Pothier*.

The defendants objected to this evidence on the following grounds: 1st. That the loss of the private act had not been proved; that it had not been sworn to, and it was not shown that diligent search had been made, or any legal steps taken to justify the admission of secondary evidence to prove its contents. 2. That the document offered had not the legal requisites of a recognitive or confirmative act, and that it was irrelevant, being between other parties and for other lands. The district judge admitted the evidence, and the defendants took a bill of exceptions.

The evidence of the loss is far from being satisfactory. It is true that in the case of *Sexton* v. *McGill*, 2d Ann. 194, we held that the proof of loss which will authorize the introduction of secondary evidence, must depend on the particular circumstances of each case. But the evidence adduced must, in all cases, be such as will satisfy the mind that no further or better evidence was within the reach of the party offering it. We are of opinion, that further evidence might have been obtained from *Mr. Conrad*. It might have been ascertained from him for what purpose the title of *Mr. Ellis* was submitted to his examination; and if, as is highly probable, it was for obtaining a mortgage loan from some of the banks, and the loan was obtained, the muniments of title must have been

deposited, and might have been found in the vault of the creditor bank. It is, therefore, extremely doubtful whether the evidence offered should have been received; but, admitting that it is properly before us, we are of opinion that it does not supply the link wanting in the plaintiffs title. The declaration of *Devilliers* relied on is, that he had made an abandonment or cession of the land to *Pothier*, by an act not valid in form, and upon certain conditions not fulfilled by *Pothier*. This is the only evidence of the contents of the act, which the plaintiffs were bound to prove affirmatively. There is nothing in the record to show the nature of the defects, or of the conditions referred to by *Devilliers*. It is urged, that more than thirty years have elapsed since the cession, and that defects of form and omissions to fulfill conditions in the contract are cured by lapse of time. It is impossible to say whether they are or not. The act may have been a mere memorandum, not signed by *Devilliers*, or the inexecution of the conditions may have had the effect of avoiding it *ipso facto*.

These doubts might have been cleared up by the testimony of *Mr. Conrad*, who had had the paper in his possession and had been consulted professionally upon its validity. As this evidence has not been resorted to, although within the knowledge of the plaintiffs, we must conclude that it would have been unfavorable to their case.

The evidence adduced raises but a remote presumption of the true contents of the title. If that presumption was invoked to sustain an open, peaceable and long-continued possession, it might, perhaps, when joined to the presumption of ownership resulting from such a possession, be held sufficient. But in this case the plaintiffs rely upon their naked title, against an adverse possession of forty years, and we would not be justified in making that presumption in their favor. 1 Greenleaf's Evidence, par. 46. *Delahoussaye* v. *Delahoussaye*.

The defendants have proved that they held the land under a private act, the date of which is made certain as far back as 1818. This action was not commenced until April, 1848, thirty years after that date. Our impression is, that it was not necessary that this private act should be recorded in the parish where the land is situated, in order to enable the defendants to regulate their possession by it. They were in actual possession of a portion of the land; this was sufficient to put the plaintiffs upon inquiry as to the nature and extent of that possession. The acknowledgment of *Cyril Prêvost*, upon which the plaintiffs rely as having interrupted the possession of the defendants in 1829, appears to us entitled to little weight. But, if considered good evidence, it would only have interrupted the possession as to *Cyril Prêvost*, and could not affect the defendants, so far as they possessed at the same time in their own right, and as owners.

The inchoate title of *Jumonville* having been confirmed by the United States, under our uniform jurisprudence, the land was susceptible of alienation by him, and a title by prescription could be acquired against him. *Rightor* v. *Kohn et al.* 16 L. R. 506. *Guidry* v. *Green*, 1 N. S. 475. *Bessy* v. *Pintado*, 3 L. R. 491. The plea of prescription appears to us satisfactorily made out.

It is therefore ordered that the judgment be affirmed, with costs.