(34 South. 738.)

No. 14,763.

## LOUISIANA SULPHUR MINING CO. v. KRAUSE et al.

(June 22, 1903.)

PUBLIC LANDS—TIDAL OVERFLOW—EVIDENCE —TITLE ACQUIRED.

1. The intention of Act No. 197, p. 159, of 1859, was to make the Register and Receiver of the State Land Office the judges of the fact whether or not land sought to be entered under its provisions was subject to regular tidal overflow.

2. If the proof submitted were satisfactory to ·them, as establishing the character of the land in this respect, they could act and permit the entry.

3. A title so derived would, at least, be recognized by the State until set aside regularly, or canceled, on proof of error on part of its officials, or error or fraud on part of those entering the land.

4. Act No. 267, p. 205, of 1861, did not repeal that part of Act No. 197, p. 159, of 1859, which authorized the entry of lands subject to regular tidal overflow at 25 cents per acre.

5. At the time those statutes were enacted, the laws of the State were required to be pro-

mulgated and published in the English and French languages. The English text of section 16 of Act No. 267, p. 209, of 1861, limits the quantity of acres of tidal overflow lands any one person could enter, at 25 cents per acre, at one hundred and sixty acres; the French text fixes it at not more than two hundred and sixty acres. The land officials in 1861 permitted one man to enter 199.75 acres of such land, and the State afterwards issued patent therefor. Such title is sustained.

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Denis Miller, Judge.

Action by the Louisiana Sulphur Mining Company against Rudolph Krause and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Cline & Cline, for appellant. McCoy & Moss, for appellees.

BLANCHARD, J. Plaintiff sues to be declared the owner of a tract of 199.75 acres of land in Calcasieu Parish, described by legal subdivision as the S. E. ¼ of Section 32 and the S. W. ¼ of the S. W. ¼ of Section 33, Township 9 South, Range 10 West.

A chain of title which dates back to January 3, 1866, when August Bohn purchased the tract, with other lands, from the State of Louisiana, is set forth.

In addition to claiming title through mesne conveyances back to Bohn, the plaintiff company alleges it and its authors held possession of the property, as owners, under the title set forth long enough to acquire it through the operation of the prescription of ten years, which was pleaded.

It is averred that its (plaintiff's) ownership of the land is disputed by the defendants, who, asserting title in themselves, have caused the property to be assessed to them for taxes and are paying taxes on it.

Defendants, first setting up certain exceptions not deemed necessary to discuss, answered denying plaintiff's ownership and denying that plaintiff or the authors of its asserted title were in possession of the land.

They alleged themselves to be in possession as owners under a title which originated on November 8, 1861, when Adolph Escoubas entered the land at the State land office.

There was judgment below in favor of defendants, and plaintiff appeals.

*Ruling*—The suit is a petitory action. Being such, it must needs have been brought against the party or parties who are in the immediate possession of the land. Hence, by suing Krause and Managan plaintiff admits their present possession.

Plaintiff company's first position is that the mesne conveyances through which it claims are, in themselves, sufficient to establish its ownership. Its second position is that these mesne conveyances, represent a title translative of property, that under the same its authors took and held possession in good faith as owners for more than ten years, and that, thus, has its title and ownership been clinched and secured by the prescription *acquirendi causa*.

We agree with the District Judge that under the facts of the case, and the law bearing upon the same, neither position can be sustained.

The State was the owner of the land. It acquired it from the General Government in 1852. Both parties concede this.

In 1861 Adolph Escoubas entered it from the State at the price of 25 cents per acre.

Subsequently, in 1866, without any previous cancellation of Escoubas' entry, the then officials of the State Land Office permitted August Bohn to enter the same land at $1.25 per acre.

The tract books of the Land Office thus showed two entries of the same land. This continued until November, 1878, when, as disclosed by an official transcript from the records of the Land Office, an order was made cancelling Bohn's entry and directing the refunding of the purchase money.

Prior to this order of cancellation, however, Bohn, it seems, had disposed of whatever title he had to the land to the Calcasieu Mining Company, one of the authors of the plaintiff's title, and the contention of plaintiff is that the order of cancellation. even if legally established, which is denied, could have no effect upon Bohn's transferee, to whom no notice preceding cancellation, it is alleged, was given.

We do not find it necessary to go into a discussion of these points, nor to pass definitely upon the same.

The State Land Officials, thereafter, recognized Adolph Escoubas as the transferee of the State's title, and in 1895, upon his

application (for the evidence makes it probable he was still living), or that of his heirs, formal patent was issued to him by the Governor of the State.

In 1900 (Adolph Escoubas having meanwhile died and his succession and that of his deceased wife having been opened) the land in question was sold at succession sale and bought by defendants.

Some two and a half years later the present suit was filed.

Defendants thus show the first entry from the state and its confirmation, later, by the State's patent.

Plaintiff's showing is a purchase from the State *later* than the one under which the defendants claim, and not only does plaintiff not show a patent from the State, but there appear entries upon the books of the Land Office, bearing upon the purchase under which plaintiff claims, that would have had the effect, at least, of precluding patent being issued under such purchase until proceedings had been taken to erase the adverse entries.

But plaintiff insists that the entry by Escoubas in 1861 is to be considered null *ab initio* for the reason that the price paid (25 cents per acre) was below that fixed by law for the sale of such lands.

The contention is that the action of the land officials in selling below the minimum price (which plaintiff contends was, for the land in question, 75 cents per acre) was in violation of a prohibitory law, and, hence, no title was conveyed to Escoubas by the entry he was permitted to make.

Plaintiff points to Act No. 195, p. 190, of 1857, as establishing 75 cents per acre for such lands as those entered by Escoubas.

But there was a later statute, to-wit:—Act No. 197, p. 159, of 1859, whose title was "An Act to graduate and reduce the price of public lands which are subject to tidal overflow," and this law fixed the price of such lands at 25 cents per acre.

The intention of the Act, gathered from its terms, seems to have been to make the Register and Receiver of the Land Office the judges of the fact whether or not the land sought to be entered under its provisions was subject to regular tidal overflow. Thus, the act required "satisfactory proof" to be submitted to the Register and Receiver of the

character of the land in the respect mentioned. This is construed to mean that, if the proof was satisfactory to the officials named, they could act and permit entry. Such a title would, at least, be recognized by the State until set aside regularly, or canceled, on proof of error on part of its officials, or error or fraud on part of those entering the land.

The officials at that early day evidently considered the land Escoubas applied for as subject to tidal overflow; he must have submitted to them satisfactory proof of this; and on such proof they permitted the entry. The State never repudiated this act of its land officials; no steps were taken to cancel the entry; and, later, it was confirmed by patent issued.

The plaintiff next points to Act No. 267, p. 205, of 1861, which was approved March 21, 1861, or prior to Escoubas' entry, and urges that its Section 16, being the then last expression of the Legislative will relative to the price of the public lands, governed; and that since Section 16 fixed the minimum price of the public lands at $1.25 per acre, the act of the land officials in permitting Escoubas to effect his entry at 25 cents an acre was void as contravening a prohibitory law.

Act No. 267, p. 205, of 1861, was a general law whose title read "An act relative to Public Lands." Its Section 16 declared that the minimum price of the public lands should be $1.25 per acre, but there was added a proviso which authorized lands subject to regular tidal overflow to be purchased at 25 cents per acre.

In this respect, it will be seen, the Act of 1861 made no change in the law as enacted in Act No. 197, p. 159, of 1859, discussed above.

"But," says plaintiff, "Section 16 of Act No. 267, p. 209, of 1861, contained another proviso to the effect that no one person should be permitted to enter more than 160 acres of tidal overflow lands at 25 cents per acre, and Escoubas was permitted to enter 199.75 acres."

True it is that Escoubas did enter 199.75 acres at 25 cents per acre, and true it is that the English text of Section 16 does name 160 acres as the maximum entry at such price. At that time the laws were required to be promulgated and published in the English

and French languages. Thus, in the Acts of 1861, as printed by authority of the State, on one page is the English text of the laws; on the opposite page is the French text. Section 16 of Act 267, p. 209, of 1861 in the French text names 260 acres as the maximum entry of tidal overflow lands at 25 cents per acre.

Which is correct—the English or the French text? Which are we to follow?

The Escoubas entry is over the maximum of acres as fixed by the English text; it is under the maximum as announced by the French text.

Were the Register and Receiver of the Land Office, awayback in 1861, guided by the French text? It would seem so.

At all events in permitting Escoubas to enter 199.75 acres they could and perhaps did take the position there was, at least, a doubt as to his legal inability to enter more than 160 acres, and that they could well construe that doubt in his favor without being amenable to the charge of violation of the law.

Perhaps, too, being at the State's Capitol, they had access to the original manuscript of Act No. 267 and found the English text of the printed law at variance with the English text of the manuscript. In other words, that the number of acres given in the French print was the number given in the English, as well as the French text, of the manuscript.

However this may be, the Gordian knot of the difficulty seems to have been cut by the Executive Department of the State government in issuing Escoubas a patent on his entry for 199.75 acres. We do not feel warranted, under the circumstances, in declaring its act unauthorized by law.

No issue was raised at the trial that the land was not subject to tidal overflow. It appears, however, that some little testimony on this point incidentally got in, and one of the plaintiff's contentions is that the evidence discloses the land was never subject to tidal overflow. We do not think this established.

Defendants' counsel, in their brief, declare that if the plaintiff had made the nullity of the Escoubas entry an issue on the ground that the land was not subject to overflow in 1861, it would have been fully met; that they were not apprised of such contention un-

til the argument of the case in the lower court.

Little need be said of plaintiff's claim to title by prescription. No sufficient possession as is required for the predicate of prescription pleaded is shown. Prevost v. Ellis, 11 Rob. 56–58, is in point and adverse to the contention of plaintiff herein.

Judgment affirmed.