No. 2228
Second Circuit Appeal

---

J. T. ELLINGTON v. ELLIS & DORSETT ET AL.

---

(May 9, 1925, Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Petitory and Possessory—Par. 27.**

Under Code of Practice Article 163 a suit which is an action of slander of title converted into petitory action by an answer of a defendant can be brought either at the defendant's domicile or in the parish where the land is situated.

2. **Louisiana Digest — Corporations — Par. 295, 301.**

The word "resides" in Articles 163 and 375 of the Code of Practice means, in the case of a foreign corporation with an agent resident in the state, the parish where the agent resides.

3. Louisiana Digest—Possession—Par. 1, 3; Prescription—Par. 46, 47.

Possession of a part of land under control of the whole is possession of the whole, subject however, to the limitation that the land claimed by constructive possession must be such as is included in the title included that also actually possessed and cannot be extended to land claimed under separate title even though such land be contiguous.

4. Louisiana Digest—Notice—Par. 1, 2.

Actual possession of a tract of land different from another's land though adjoining it, is not notice to the other party of any claim to his tract.

5. Louisiana Digest—Possession—Par. 5; Prescription— Par. 46, 47.

"Limitations of title" under Article 3498 of the Civil Code means limits of that title which covers the land whereof actual possession of a part is taken and not other titles covering different land even though this different land adjoins that of which possession of a part is taken.

6. Louisiana Digest—Prescription—Par. 12, 20.

Under Article 3487 of the Civil Code, civil posession must be preceded by corporeal possession, in order to give title by prescription.

7. Louisiana Digest—Prescription—Par. 12, 20, 34; Registry—Par. 7, 8.

In view of Articles 2264, 2266, 3437, 3487 and 3498 of the Civil Code an unrecorded deed cannot support the ten years prescription acquirendi causa as to a tract not actually possessed but only regarded as constructively possessed by reason of the actual possession of another tract which is separate from it as to ownership though contiguous to and forming one body of land covered by the same deed.

8. Louisiana Digest—Appeal—Par. 181, 509.

A petition for an appeal stating that a plea of ten years of prescription had been sustained and all calls in warranty dismissed does not, nor does the bond for appeal thereunder, show any acquiescence in that part of the judgment sustaining the plea of prescription or limiting the appeal to the judgment rejecting the demands against the warrantors.

Appeal from Eighth Judicial District Court of Louisiana, Parish of Franklin, Hon. S. R. Holstein, Judge.

The purpose of this suit at first was the partition of 280 acres of land. The main question decided however, was the title to 80 acres of land executed by one Kesterson, in favor of the West Virginia Timber Company. The West Virginia Timber Company called Vincent and Hayne in warranty. Vincent and Hayne filed four exceptions which were overruled. A petition was later filed for Dan Buie alleging that he had acquired the interests of all the original parties to the suit except those claiming 80 acres held adversely by the West Virginia Timber Company and its warrantors. Buie claimed possession of the land for over 30 years and pleads prescription of ten years and 30 years. The lower court gave a judgment sustaining the plea of 10 years' prescription advanced by Buie; and the West Virginia Timber Company appealed. Judgment of the lower court reversed and the plea of 10 years' prescription by Buie overruled, the case remanded for further proceedings according to law.

Ellis and Ellis, of Rayville, attorneys for plaintiff in plea of prescription.

T. V. Berry, of Rayville, attorney for West Virginia Timber Company.

Hudson, Potts, Bernstein and Sholars, of Monroe, attorneys for warrantors, Vincent and Hayne.

CARVER, J. This suit was brought in 1911 by J. T. Ellington against C. J. Ellis, E. N. Dorsett, Tensas Delta Land Company, Limited, J. W. Kesterson and Fred. Buskin.

Its main purpose was the partition of 280 acres of land in which the plaintiff claimed an undivided one-third interest and Buskin, Ellis and Dorsett the other two-thirds, and incidentally to have decreed null as to plaintiff's interest the claims of Tensas Delta Land Company, Limited,

and Kesterson who, plaintiff alleged, claimed the whole of some of the land.

The Tensas Delta Land Company, Limited, filed a general denial, and the record does not show that it ever owned or claimed any of the land. It is thus eliminated from the suit.

Subsequently plaintiff filed an amended petition alleging that the Tensas Basin Levee Board claimed some interests in the land; but the Levee Board thereafter executed a quitclaim deed to the successors of plaintiff and his co-claimants; thus eliminating the Levee Board also from the suit.

Pending the suit, Kesterson, who claimed 80 acres, executed a deed in favor of the West Virginia Timber Company, conveying it to that company. Thereupon plaintiff filed a supplemental petition making the West Virginia Timber Company a party. That company answered, setting up its title under its purchase from Kesterson and alleging that it obtained from Kesterson subrogation to his rights of warranty against his vendors and that said vendors, Vincent and Hayne, had warranted the title, wherefore it called them in warranty.

Hayne and the representatives of Vincent who had died, filed exceptions as follows:

1. Improper joinder of defendants.
2. Improper cumulation of demands.
3. Vagueness.
4. No cause or right of action.

These exceptions were apparently overruled, whereupon Vincent and Hayne answered denying that they had warranted Kesterson's title or that he had subrogated the West Virginia Timber Company to his rights of warranty. They also set up their chain of title as follows:

Document 48. Tax Collector to J. M. Dresser in the year 1900 for taxes of 1899 assessed to Levis Brothers.

Dresser to North Louisiana Land Company; July 10, 1903.

North Louisiana Land Company to Blair Pierson; December 16, 1906.

Blair Pierson to Simon Goldman; October 7, 1907.

Simon Goldman to Wesley Halliburton; July 6, 1909.

Wesley Halliburton to Vincent and Hayne; February 3, 1910.

They also asked that their vendor, Halliburton, an absentee, be called in warranty and cited through a curator ad hoc.

This was ordered by the Judge. E. B. Moore, an attorney, was appointed curator and served. We find no answer either by the curator or any one else for Halliburton.

On March 2, 1917, Fred. S. Boughton filed a petition alleging that he had acquired the interest of Ellington, Ellis and Dorsett, and asking to be made a party.

On July 6, 1920, Dan Buie filed a petition alleging that he had acquired the interests of all the original parties to the suit except those claiming 80 acres of the land adversely to him and his authors.

This 80 acres in N½ of NE¼ of Sec. 18 Tp. 16 N. R. 8 E. and the adverse claimants are the West Virginia Timber Company and its warrantors.

Buie further alleged that he and his authors had been in possession of all the land for over thirty years, wherefore he pleads the prescription of 10 and 20, probably meaning 30, years.

Thus the contest narrows down now to one between Buie on the one side and the West Virginia Timber Company and its warrantors on the other.

Buie's title traces to the heirs of D. C. Henderson who died in 1869 owning all of the 280 acres, having acquired it as follows:

January 10, 1859; E½ of NW¼ of Section 17, with other lands from the State.

December 15, 1859; SE¼ of SW¼ of Section 8, with other lands from the State.

The W½ of NW¼ of Section 17 in 1858 from the Succession of Mary Burns.

The N½ of NE¼ of Section 18 from A. W. Best and Lucinda Best his wife on December 3, 1860.

A. W. Best acquired the N½ of NE¼ of Section 18, and other land, from the State in 1857.

The land lies in one body but Big Creek runs between the 80 acres described as N½ of NE¼ of Section 18 and the rest of the land, though there is, according to Scott, a surveyor, a bare possibility that some small portion of this 80 acres lies east of the creek.

The creek is the boundary line between Franklin and Richland parishes, Franklin parish lying east of the creek and Richland parish west of it.

The deeds forming the West Virginia Timber Company's chain of titles were as alleged in the answer of Vincent and Hayne, but further deeds were introduced carrying that chain further back as follows:

No. 46. Tax Collector to Patrick Mathis in 1881 under Act No.———of 1880 providing for the sale of property formerly forfeited or adjudicated to the State. The deed recited that the property had previously been forfeited to the State for unpaid taxes due by Lucinda Best, though for what years is not stated.

No. 47. Patrick Mathis, by the sheriff, to Levis Brothers in 1884.

The deed adjudicating the property to the State does not appear to have been introduced in evidence.

The plea of prescription filed by Buie was set down for trial separately and judgment was rendered sustaining the plea

and rejecting the demands "of all parties claiming any part of the real estate in controversy which are adverse to the claims of ownership as set up in the original petition".

The demand in warranty was not passed on, but the costs were taxed against the warrantors.

The West Virginia Timber Company alone appealed but Hayne and the representatives of Vincent file a motion insisting on the exception filed by them. This motion, though, cannot be considered, as the judgment cannot be amended as between appellees.

See Louisiana Digest, volume 1, pages 579-580.

Their counsel say that the court should on its own motion dismiss the suit for lack of jurisdiction in the court a quo because the suit was brought in Franklin parish and the 80 acres now in contest is situated in Richland parish.

Code of Practice, 163, provides:

"In actions of revendication of real property * * * the defendant may be cited * * * either within the jurisdiction where the property revendicated * * * is situated, though he has his domicile or residence out of that jurisdiction, or in that where the defendant has his domicile, as the plaintiff chooses."

In Williams vs. Zengel, 117 La. 610, 42 South. 153, the Supreme Court says:

"The action of slander of title is a form of the possessory action. Dalton vs. Wickliffe, supra; Cross on Pleading, No. 262. In all its forms the possessory action is an action of revendication, for it has for its object the assertion of rights to real estate. It involves real estate."

This suit, so far as the 80 acres in contest is concerned, is an action of slander of title converted into a petitory action by the answer of the West Virginia Timber Company. The suit, therefore, could be

brought either at the defendant's domicile or in the parish where the land is situated.

Kesterson, the original defendant, lived in Franklin parish so could be sued there.

The West Virginia Timber Company has its main domicile in West Virginia but has an agent in Franklin parish who, plaintiff alleges, was authorized to receive services of legal process and who accepted service herein.

In its answer the West Virginia Timber Company did not deny his authority.

We think that Franklin parish must be considered as the Louisiana domicile of that company, and that therefore the action of slander of title could be brought against it there.

In Texas & Pac. Ry. Co., vs. Chatwin, 135 La. 143, 64 South. 1017, the court says in its syllabus:

"The word 'resides' as used in Code Prac. Art. 375, refers, with reference to a foreign corporation, to its chief office or place of business, or where its authorized agent in the state, upon whom process may be served, 'resides'."

We think that the word "resides" in article 163 must equally mean, in the case of a foreign corporation with an agent resident in the state, the parish where the agent resides.

The sole remaining question to be determined on this appeal is whether the plea of prescription was properly sustained.

We are unable to agree with our learned brother of the lower court on this question. It is not pretended that Buie or his authors have now or ever have had any actual, corporeal possession of the 80 acres in dispute. The claim is that it was a part of the Henderson place, consisting of the 280 acres described above, which 280 acres was acquired by Henderson by four different deeds, and that actual possession of part of this 280 acres was actual possession of the whole.

The proof shows that in 1868 and prior thereto Henderson lived on the Northwest quarter of Section 17 where he had a considerable clearing and several buildings, his clearing probably touching all four 40's of this quarter section but not extending to the land in Section 18 which was across the creek from that in Section 17.

He, and his heirs after his death, which occurred in 1869 continued occupation, either personally or through tenants, down to and including the year 1879 after which it was apparently no longer in the actual possession of any one until about January 1907, when Ellington moved on it, cleared about 32 acres, fenced about 50 acres and built several buildings; all these improvements being where the old Henderson improvements were. Since that time he and his successors in title have remained in actual possession.

On February 19, 1907, he obtained and recorded in Franklin parish but, so far as the record shows, not in Richland parish, where the 80 acres in question are situated, a deed from Mrs. Mecklin, one of Henderson's three heirs, the deed covering her one-third interest in the whole 280 acres.

The answer of the West Virginia Timber Company setting up its title thereby converted the action into a petitory action was filed January 23, 1918, more than ten years after Ellington had gone into possession under his recorded deed. Of course this constituted an interruption of prescription and pending the suit also a suspension thereof.

In 1888 one of Henderson's daughters sold her one-third interest in the whole 280 acres to H. Block who, in 1906, sold it to Ellis and Dorsett; but no possession seems to have been taken under these deeds which were recorded in Franklin

parish but so far as the record shows not in Richland parish.

The other Henderson heirs did not sell their interests until 1910 and afterwards.

Buie's counsel claim that although the Hendersons and their successors in title did not continue actual occupation after 1879, yet that there remained vestiges of the former improvements and that these, together with some payments of taxes, sufficed to continue civil possession.

In our opinion the actual possession by Henderson and his heirs of the land in Section 17 did not amount to constructive possession of that in Section 18. They were separate tracts, having been segregated from the public domain by separate entries, acquired by Henderson under separate deeds and being situated in different parishes. The mere fact that the two tracts were contiguous and belonged to the same owner, while it may have made them one estate in a sense, did not, we think, make them one in the sense of the law providing that actual possession of a part under title to the whole is possession of the whole.

Although we have discussed the question of possession claimed to have been enjoyed by Henderson and his heirs yet really that possession prior to the time of the adjudication to the state of the 80 acres in question for the taxes of L. Best, even if such possession be regarded as extending, constructively, to that 80 acres, is immaterial so far as concerns the plea of prescription advanced by Buie. Up to the time of the adjudication the title of the Hendersons was good without reference to prescription. Whether they had possession or not up to and at the time of the tax sale to Dresser in 1900, may also be immaterial on the question of Buie's plea. Such possession may be of importance when it comes to considering the validity of this tax sale and the three years' prescription advanced in support of them, but it cannot avail to establish Buie's plea because if either one of these tax sales was valid—and at present we cannot presume otherwise—its effect was to oust the Hendersons of their possession and divest them of their title as well. On this view, too, it is clear that the civil possession claimed for Buie's predecessors in the title prior to Ellington cannot at this stage of the proceeding avail to establish his plea which, therefore, must rest along upon the possession taken by Ellington in 1907.

It must be borne in mind that in the present attitude of the case we cannot pass on the validity of the tax sales or the pleas of prescription advanced in their support, being confined to a consideration of Buie's plea of prescription which was the only question decided below and therefore the only one of which we can take cognizance on this appeal.

The principle that possession of a part under title to the whole is possession of the whole is, as shown above, subject to the limitation that the land claimed by constructive possession must be such as is included in the title including that also actually possessed and cannot be extended to land claimed under separate titles even though such land be contiguous.

It strongly might be argued that the principle is within another limitation, namely: that the land to which possession is thus constructively extended must be such as legally may be regarded as part of the same tract as that actually possessed not an entirely separate tract.

It was held in Gulf Refining Co. vs. Jeems Bayou, etc., Club 129 La. 1021, 57 South. 322, that the principle does not apply so as to operate constructive possession of a tract widely separated in space from another actually possessed although the two tracts were included in the same deed.

Reasons might be conceived for regarding two tracts as legally separate though contiguous to each other and included in the same deed. They might have been separately severed from the public domain or, if severed as one body, might have been separated by subsequent subdivision and in either case purchased by different owners.

If one should obtain a deed calling for a whole parish it could hardly be contended that by taking actual possession of a part he would be getting constructive possession of the whole. Nor would actual possession of a part give constructive possession of a whole township which had been subdivided and sold to different purchasers.

So, if a tract be divided into town lots and blocks and these sold off to different purchasers, it could not well be claimed that actual possession of one lot under a deed calling for a whole block the other lots in which were owned by different purchasers would operate as constructive possession of the whole block.

One having a perfect title to a tract of land should not be obliged to take actual possession to guard against the danger of losing it by a hostile possession merely constructive of which he could have no knowledge except by reading the deeds of everybody in the neighborhood to see whether his land was included in any of them or not.

If no one pretended to take actual possession of his tract he should be able to rely on this apparent respect of his title as safe assurance that no one was claiming adversely to him. His title gives him a right to possession and the argument is quite persuasive that it carries a constructive possession which though it may be ousted by an adverse actual possession cannot be ousted by a possession merely constructive like his own but unlike his own not rightful. Such a possession hardly measures up to the standard of openness, publicity and notoriety required by law. Such constructive possession could certainly not overcome the constructive possession which an owner would enjoy of his whole tract if he were in actual possession of any part of it. Actual possession of a tract different from his though adjoining it is hardly notice to him of any claim to his tract.

However, in the case of Leader Realty Co. vs. Taylor, 147 La. 286, 84 South. 648, and Leonard vs. Garrett, 128 La. 543, 54 South. 984, the lands to which constructive possession was held applicable were separate tracts from those actually possessed, in the sense that they were severed from the public domain separately and belonged to different owners.

It must be observed, though, that in neither one of those cases were the above considerations adverted to. Also it must be observed that in the Leonard case the title under which prescription was sustained was one emanating from the United States Government and covered the land in controversy which, though, it appeared really belonged to the State by virtue of its sovereignty.

We have seen that the deeds in Buie's chain of title were not recorded in Richland parish where the land is situated.

In Duplessis vs. Boutte, 11 La. 342, the Supreme Court held that an unrecorded deed could not support the plea of ten years' prescription, giving as the reason that such a deed could have no effect as to third persons unless recorded in the parish where the land is situated, which was required by an Act passed in 1810.

Prevost vs. Ellis, 11 Rob. 56, virtually reaffirms this doctrine, though not so squarely.

Our present law provides, Civil Code 2264:

"No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder or register of conveyance of the parish where such immovable property is situated."

Civil Code, 3437, provides:

"It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries."

In Leader Realty Co. vs. Taylor, 147 La. 266, 84 South. 648, the Supreme Court, referring to this article, says:

"The word 'boundaries' in that article means the limits or marks of inclosures if the possession be without title, or the boundaries or limits stated in the title deed if the possession be under a title. That is made plain by article 3498, which declares that—

"When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits."

We think it clear that "limits of title" means limits of that title which covers the land whereof actual possession of a part is taken and not other titles covering different land even though this different land adjoins that of which possession of a part is taken.

On this view Buie's authors must be held not to have shown any possession of the 80 acres in question prior to 1888. Up to that time they had no title under which actual possession of other land could be regarded as constructive possession of that in Section 18. In 1888, as we have seen, Rosa Baskin, one of Henderson's daughters, sold to H. Block her one-third interest in the whole 280 acres, and in 1906 Block

sold this to Ellis and Dorsett. The deeds conveying this interest were promptly recorded in Franklin parish but as far as the record shows not in Richland parish. The deed to Block covering one-third interest in the whole 280 acres was the first one under which it plausibly could be claimed that possession of part was possession of the whole. At that time the Hendersons had been out of possession some eight years or more, though retaining civil possession of the land in Section 17 because of the remaining vestiges of the former improvements. Did this deed to Block, conveying as it did all the rights of Rosa Baskin including such right of possession as she had and such possession, actual or civil, as she had, operate to give civil or constructive possession of the 80 acres in Section 18? We think not. Not having had possession of that 80 acres herself, either actual or constructive, none was conveyed to Block. For the same reason no possession of that 80 acres followed the sale by Block to Ellis and Dorsett, and we have already seen that neither Block nor Ellis and Dorsett took actual possession of any of the land. But civil possession of the land in Section 17 which had not theretofore operated as constructive possession of that in Section 18 could not, we think, thereafter so operate. Besides, civil possession, in order to give title by prescription, must be preceded by corporeal possession.

Civil Code, 3487, provides:

"To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:

1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been proceeded by the corporeal possession."

* * *

The first deed under which the principle under discussion could avail to give constructive possession of the tract in Section 18 was that of date February 19, 1907, from Mrs. Mocklin to Ellington who did take acutal possession of a part under title not indeed to the whole but to an undivided one third of the whole.

Did the actual possession of the tract in Section 17 which he took under that deed give him constructive possession of the 80 acres in Section 18 so as to ripen after ten years into a prescriptive title as to his one third interest? If so, did it also ripen the title of those buying from Ellis and Dorsett whose title as well as Ellington's called for an undivided interest in the whole 280 acres, and if this be so, then, finally, did it also ripen the title of the Henderson heirs who, up to 1910, had not sold their interest and whose title, therefore, to the land in Section 18, was a different one from their title to that in Section 17?

We think this last question must be answered in the negative for the reasons given. The deeds to the purchasers from these last named Henderson heirs though covering an interest in the whole 280 acres were less than ten years old when prescription was interrupted by the West Virginia Timber Company's answer. If, therefore, the possession of Ellington and his successors could ripen into a prescriptive title, as to the 80 acres in question, this would be true only as to the interests acquired by him and by Ellis and Dorsett.

Without deciding, for the present, how the first two of the above questions should be answered, we pass to another consideration. ....

Civil Code, Art. 2266, provides:

"All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.

"The recording shall have effect from the time when the act is deposited in the proper office, and endorsed by the proper officer."

Other articles provide how the registry shall be made.

These provisions are substantially those contained in acts passed in 1855 with some changes made in the revision of the Code in 1870, all looking to making the requirement of registry more rigid.

In Hudnall vs. Watts, 8 La. Ann. 5, being an action for the recovery of a slave, the prescription of which under title was five years, the court said:

"We are of opinion after careful examination of the law and the authorities cited in argument that there is nothing in the registry laws which precludes a title not registered from being the basis of the prescription mentioned in article 3444 Civil Code (this was five years) when it is accompanied by actual possession with the incidents prescribed in article 2453."

In Bracy vs. Buck, 11 La. Ann. 10, the Supreme Court reaffirmed the Hudnall case.

Both of these decisions were rendered in 1856, after the act of 1855 was passed; but the Hudnall case was instituted in 1850, so of course was not affected by that act. The report does not show when the Bracy case was instituted, but we are satisfied that the act of 1855 did not affect it either.

In Winston vs. Prevost, 6 La. Ann. 164, the court said:

"The defendants have proved that they held the land under a private act the date of which is made certain as far back as 1818. This action was not commenced until April, 1814, thirty years after that date. Our impression is, that it was not necessary that this private act should be recorded in the parish where the land is situated, in order to enable the defend-

ants to regulate their possession by it. They were in actual possession of a portion of the land; this was sufficient to put the plaintiffs upon inquiry as to the nature and extent of that possession."

In Bernstine vs. Leeper, 118 La. 1099, 43 South. 889, the Supreme Court, without citing any authorities, seems to have followed the doctrine of the Hudnall and Bracy cases, saying with respect to a plea of prescription under an unrecorded deed—

"But we do not find that registry plays an important part in the matter. It would be important only if plaintiff were relying upon the sheriff's deed as conveying the property; but he is relying upon it merely as showing *rem ipsam*, namely: that he had a title—a title which fixed the boundaries of the land and which justified him in believing that he was the owner. A trespasser 'acquires possession inch by inch only the part he occupies'. (See Hennen, page 1205, No. 2) but the person who goes into possession by virtue of a title acquires possession of the entire estate the former possessor abandons to him."

It must be noted, though, that in the Hudnall, Bracy, Prevost and Bernstine cases the parties claiming prescription were in actual possession, either in whole or in part, of the very property as to which the prescription applied and not merely claiming constructive possession of that property by reason of their actual possession of adjoining property. The Hudnall and Bracy cases involved slaves which, of course, were not susceptible of possession merely in part.

In Succession of Dougall vs. Fos, 14 N. O. App. 322, being suit by Dougall's heirs to recover real estate sold more than ten years before the suit was filed by Dougall to Fos, by deed which plaintiffs had not recorded, the court said:

"Whatever defect there was in the title which plaintiffs acquired at the time of the sale has been cured by the prescription of ten years."

The court cited the Duplessis, Hudnall and Bracy cases and followed the last two as being the last expression of the Supreme Court. The court held also that Dougall's heirs had accepted his succession and were enjoying property acquired through it, wherefore they could not attack Dougall's act, being bound, as he was, as warrantor to Fos.

This last ground being fully decisive of the controversy, the other holding was really not necessary to a decision.

In the Dougall case, too, there was actual possession of the very property claimed by prescription.

The case of McDuffie vs. Walker, 125 La. 152, 51 South. 100, did not involve a question of prescription but was an exhaustive examination of our laws of registry. Attention was called to the many decisions in which the registry laws had been relaxed and the conclusion of the court was that this relaxation was improper and that the law-maker should be obeyed when it stated that unregistered deeds should have no effect except as between the parties thereto.

It seems to us that inasmuch as a possessor without title can only acquire ownership in thirty years whereas one with title can acquire it in ten years, it is giving very considerable effect to an unrecorded deed as to a third person to hold that it can support the ten-year prescription. Such third person, the true owner, only loses his land on thirty years by suffering the adverse claimant to continue his possession if the deed is of no effect. To say that the deed may reduce this term to ten years is to make it very effective indeed.

If, though, as held in the Leader and Leonard cases, constructive possession may be obtained of one tract though separately owned by virtue of a deed calling for it and another tract the actual possession of which is taken, and if, as held in the Hudnall, Bracy, Winton, Dougall and Berns-

tine cases an unrecorded deed as well as a recorded one can be made the basis of ten years' prescription where the land actually possessed is the same as that sued for, we have been referred to no decision and have not ourselves found any which hold that an unrecorded deed can support the ten years' prescription *acquirendi causa* as to a tract not actually possessed but only regarded as constructively possessed by reason of the actual possession of another tract which is separate from it as to ownership though contiguous to it and in respect of space forming with it one body of land covered by the same deed.

The land in question here, the N½ of NE¼ of Section 18, having been segregated from the public domain separately from the land in Section 17, having been acquired by Henderson under a different deed from those by which he acquired that in Section 17, having been the subject of two tax sales which, if valid, divested the title of those claiming under Henderson, being across the creek from the land in Section 17 and in a different parish, we do not think that the posession held by Ellington and his successors in title of the land in Section 17 was constructive possession of the land in dispute. The actual possession of that in Section 17 under a deed not recorded in Richland parish, was not, in our opinion, such open, public and notorious possession of that 80 acres in question as is required by law.

Buie's counsel argue that the appeal of the West Virginia Timber Company was not from that part of the judgment sustaining the plea of prescription but only from that part rejecting its demand in warranty. We do not, though, concur in this view.

It is true that in the argument of counsel before this court he complained mainly of this feature of the judgment, but the petition for appeal stated in paragraph 5 is as follows:

"That said judgment was rendered sustaining the plea of 10 years' prescription and dismissing all calls in warranty, and without your petitioner having been granted the relief prayed for in his call against Vincent and Hayne in warranty, and your petitioner is aggrieved and injured by said judgment and desires an order for a devolutive appeal returnable, etc."

"The prayer is for an order for a devolutive appeal from the judgment rendered on the 2nd day of November, 1923, in the suit, etc."

And further, "that the necessary citations of appeal be given to all parties at interest herein, etc."

Service and citation of appeal were accepted by Buie's attorneys.

The bond states that the appeal is "from a final judgment rendered against it in the suit of J. T. Ellington versus, etc."

Nothing in this petition or bond shows any acquiesence in that part of the judgment sustaining the plea of prescription or limits the appeal to the judgment rejecting the demands against the warrantors.

Buie's counsel also argue that a small part of the land may be in Franklin parish, but we think the proof sufficiently shows that practically all of it and perhaps entirely all of it is in Richland parish.

He also advances the argument that inasmuch as the West Virginia Timber Company's title rests upon a tax sale made in Franklin parish it does not lie in its mouth to argue that the land is in Richland parish. As said above, though, we cannot now deal with the validity of the tax titles but only with Buie's plea of prescription.

It is decreed that the judgment of the lower court be reversed, the plea of ten years' prescription advanced by Buie be overruled, and the case remanded for further proceedings according to law.