Statement of the Case.
NICHOLLS, J.
The plaintiff Mrs. Annette P. Roberts alleged in her petition: That she was the owner of certain described property. That she is a child of the marriage of Paulin Pontelieu, who died in 1874, and Octavie Gonsoulin, who died about 1890. That they had only two other children — Pontelieu, who died when a child, and Paulin Pontelieu, Jr., who died about 1902, and she is the sole surviving heir of the said parents and their said deceased children. That her father’s succession was opened in Vermilion parish in 1874. Laodice Pontelieu was appointed administrator, and said undivided portion of lot was duly inventoried as part thereof, and was administered upon and sold therein. That a pretended, but illegal, sale thereof having been made thereof in said succession on November 18, 1875, same was at the suit of creditors of said estate declared null and void by judgment of the district court in and for said parish, rendered on the-day of March, 1878, in the suit entitled Hermann and Vignes (1419) v. L. Fontelieu,. Adm’r, et al., and in 1878 Wm. P. Schwing, having been appointed administrator of said estate vice said L. Pontelieu, obtained an order to sell the property of said estate including- said undivided half lot, advertised, and, after due proceedings on the 11th day of June, 187S, sold said undivided half lot and other property at public sale to petitioner’s mother, who had renounced the community between herself and her deceased husband. That said sale was duly recorded, and her said mother went into possession of said portion thereunder, and that in no way has the title thus; acquired by her been parted with.
That her said mother having removed from the said parish, Wakeman W. Edwards, who-from 1870 to the present time continuously has been a resident and a practicing attorney in said parish, and who had represented creditors of and taken part in the litigation affecting said succession, and had full knowledge of all the facts abov-e set forth, tortiously and wrongfully took, and has ever since retained, possession of said lot as owner, including the portion above described, though he had always known that he had no right to same, and though petitioner’s said mother-protested against his said possession. That, even if the said Edwards be held in any way entitled to the remaining one-half of the said property which is denied, he has no title to nor right whatever upon said portion herein claimed by petitioner, and is even in that event merely a co-owner therein with her. That for the entire term of his said possession, which has lasted more than 25 years, said Edwards has been using said lot, including the undivided half herein claimed, sometimes personally and at times renting same to others and collecting and using said rents. That the said land has greatly enhanced in value since her said mother’s purchase, and that the interest in same which is claimed herein now' largely exceeds in value $5,000, and that the rental value thereof has .likewise increased. That said Edwards owes petitioner for the use by him and rent of said undivided portion herein claimed for each and every month from his taking possession sums. *197 as follows, to wit: From the time of his taking possession for each month until January 1, 1892, the sum of $20, amounting in all to $2,500 or more; from January 1, 1892, to January 1, 1898, $30 a month, making $2,160; from January 1, 1898, to this date at the rate of $40 a month, making $4,-560; being a total due for use and rent as aforesaid of $9,220, this being the fair rental thereof during said time. That said defendant refuses to deliver possession of said portion to petitioner, nor will he pay said amounts due for the use and rent thereof.
In view of the premises, plaintiff prayed that said Edwards be cited according to law to answer this demand, and that, after due proceedings had, there be judgment in favor of plaintiff and against said defendant, recognizing and decreeing petitioner the owner of said above-described one-half interest in said property, and, as such, entitled to full and peaceable possession thereof, and that writs of possession and all other writs necessary in the premises issue accordingly; further, that the said defendant be condemned and adjudged to pay petitioner the sum of $9,220, being for the use and rent thereof to this date, and a further sum of $40 for each and every month during the continuation of this litigation, and until petitioner shall have been placed in undisturbed possession of her said portion as prayed for, and she prays for general relief.
Defendant pleaded the prescription of 10 and 30 years acquirenda causa and in bar of the action.
Plaintiff filed an amended and supplemental petition, in which, reiterating her original averments, she alleged; That the courthouse of Vermilion parish in the town of Abbeville was destroyed by fire about the year 1885, and that in said fire there was also destroyed nearly all of the records of said parish, including the original conveyances, mortgages, and the files of suits, minute books, successions, and probate records as well as all papers and documents therein. That of the few original records not wholly destroyed all or nearly all were badly burned or scorched or were injured by water. That among the documents destroyed as above were the following, to wit: The file of the succession of plaintiff’s deceased father, Paulin Eontelieu, including the petition for an inventory of the property of said succession with a view to the appointment of an administrator, the order thereon for the inventory, and the inventory itself, which was made thereunder and filed about the year 1874, the petition for appointment of Laodice Eontelieu as administrator of said estate, together with the order appointing him as such, his oath and bond qualifying him as such, and the letters of administration issued to him therein; also, the petition filed by Laodice Eontelieu as administrator praying for the sale of the property of said estate, together with the order granting same, the commission issued thereon for said sale, and proces verbal of said sale itself, made under said order and commission about the 18th of November, 1875; also, the provisional account and tableau of distribution filed in said succession by said administrator, the opposition thereto filed by various creditors, or concerns claiming to be creditors including the opposition of Hermann and Vignes; also, the amended account and tableaux filed therein by said-administrator, the renunciation of the community by the surviving widow of the deceased, Mrs. Octavie Gonsoulin, wherein she claimed the $1,000 allowed by law, with privilege to widows and children in necessitous circumstances, also all the proceedings, minute entries and evidence taken on the trial of said opposition, the judgment of the district court rendered thereon, the order and bond of appeal from the Supreme Court of this state on said opposition, and a certified copy of the judgment of the Supreme Court rendered on the said appeal.
That there was also destroyed in the said, *199 fire the file of the suit entitled Hermann and Vignes v. Laodice Fontelieu, Administrator, et al., which suit was instituted in the said parish of Vermilion about the year 1896, including in said destruction the petition, answer, and all pleadings in said suit, the evidence taken on trial thereof as well as the minute entries concerning same, and the judgment rendered therein, the commission and order of appeal from such judgment, the appeal bond furnished in said matter, and the certified copy of the judgment of the Supreme Court rendered in said matter reversing the judgment of the lower court, and remanding case for further proceedings, said judgment being rendered about June, 1877; also the petition of the plaintiffs making the administrator of said estate a party to said suit; also the original of an agreement and confession of judgment of the defendants in said suit, they being the said administrator, as well as Mrs. Ernestine Fontelieu, wife of Theodore Fontelieu, and her said husband, which said suit being brought against them to have decreed null or to annul the sale of the property of said estate made by said administrator on November 18, 1875, to said Fontelieu, including the one-half interest of the succession of Paulin Fontelieu in the said lot, and being the half interest not sued for and the said confession of judgment and agreement consenting that judgment be rendered in accordance with the said prayer, and that the said sale be decreed null and void; also the judgment rendered in said suit which was signed on the-day of March, 1S78, in favor of said Hermann and Vignes, decreeing illegal, null, and void the said sale of said property made on November 18, 1895, to Ernestine Fontelieu; also the surrender of the administratorship of said estate of Paulin Fontelieu by Laodice Fontelieu about said date, the petition for an appointment for William F. Schwing as administrator after due proceedings, his oath and bond qualifying as such; also the petition of the said William F. Schwing for an order to sell the property of said estate to pay debts, as well as an order granting same, the commission issued thereon, the sheriff’s return, and the proces verbal of the sale made under said order, which sale was made on or about the 11th day of June, 1878, being the said sale at which petitioner’s mother became the said purchaser of the interest of said estate in the property now sued for.
Petitioner further shows that both of said appeals to the Supreme Court, that in succession of Fontelieu and that in Hermann and Vignes v. Fontelieu, above mentioned, were returned in Opelousas, La.; and that the courthouse of St. Landry parish in which were kept the records of said Supreme Court, including the transcripts and judgments recorded in said appeal, was destroyed by fire about 188 — , and said transcripts and judgments were burned and fatally destroyed. Petitioner shows that, because of the destruction of the said documents as above set forth, it will be necessary to prove their contents by secondary evidence on trial of this suit.
In view of the premises, plaintiff prays that this amendéd and supplemental petition be allowed, and she further prays as in her original petition and for general relief and all costs.
Defendant answered. After pleading a general denial, defendant admitted that the courthouse of Vermilion parish was destroyed by fire on the night of April 5, 1885, and that the greater part of the records of the parish and titles to property were destroyed in said fire, but he does not admit the existence of the documents mentioned in plaintiff’s previous petitions, or their destruction unless their existence is proved. And, further answering, defendant averred that he specially denied that the said plaintiffs had any legal right, title, or interest in or to any portion or part of the said lot herein claimed by said Annette Fontelieu Roberts, the same being lot 42, Me- *201 gret’s portion of Abbeville, and specially denied that tbe succession of said Paulin Eon-telieu was ever owner of any portion of said lot sued for, or ever bad any right or title herein, and be averred that, if any such inventory or sale of said lot or any portion thereof as belonging to the succession of Paulin Eontelieu was ever made as plaintiff bad averred, tbis defendant denied all knowledge thereof, and averred that such inventory and sale were absolutely null and void, being the sale of the property of another person not the owner, and plaintiffs could derive no title therefrom.
But defendant averred the truth to be: That in the month of June, 1878, the date of said pretended sale of said lot 42 by the administrator of the succession of Paulin Eon-telieu, deceased, and long prior thereto, said lot in its entirety was the sole property of one Yoorhies Trahan, and so continued to be until the month of August, 1880, being incumbered with a legal mortgage in favor of the state of Louisiana and parish of Vermilion, resulting from the recordation of the tax collector’s bond of said Voorkies Trahan, which bond was duly recorded in said parish; that said Trahan acquired said lot entire during the year 1873 from the succession of Daniel O’Bryan, deceased, by a good and valid title duly recorded, the adjudication of said lot to said Trahan being item No. 51, as defendant believes, of the procSs verbal of said succession sale, which was duly recorded, and was based on an order of sale of said succession property duly made and recorded, and that said Daniel O’Bryan acquired said lot by good and valid titles duly recorded at a sheriff’s sale of the property of one Prin-dall in the year 1859.
That he (defendant) acquired the entire of lot aforesaid on the 7th day of August, 1880, at a sheriff’s sale of the property of said Yoorhies Trahan, the then owner of said lot, by a good and valid title thereto, duly recorded, and entered into immediate possession thereof as owner, and has since so remained. That said sheriff’s sale was made in execution of a judgment against said Tra-han as tax collector, and with recognition of mortgage on all his property.
That the above-mentioned sales of the property of Prindall to Daniel O’Bryan and the sale of the succession property of said O’Bryan to Yoorhies Trahan and the said sheriff’s sale of said lot to defendant in the year 1880 with all the judgments and orders were regularly and duly made on the proper orders, judgments, proceedings, writs, and advertisements, all of record in said parish, and were valid and legal in all respects, but that all the said records and proceedings have been lost and destroyed by fire, so that defendant is unable to produce the same, and craves leave to introduce secondary evidence of their contents on the trial of this cause.
That he had expended $6,000 in improving said lot, and reserved his right to claim the same if need be in a further proceeding.
In view of the premises, defendant therefore prayed that plaintiff’s demand be rejected, with costs, and that the defendant be quieted in his title aforesaid.
The heirs of the wife of the defendant appeared, and, after alleging her death, they declared that they accepted unconditionally her succession. Alleging that the property involved in the suit was community property they made themselves codefendants in the action. They adopted the allegations and defenses of their father. The plaintiffs (under objection of defendant) filed a supplemental and amended petition, in which they alleged: That, if at any time Yoorhies Trahan purchased in his own name said lot No. 42 of Megret’s portion (?) of the town of Abbeville (which was denied), he did so for the joint account of himself and Paulin Eontelieu, father of petitioner, with whom he was in partnership in said parish of Vermilion. That, *203 if any such purchase was made, it was with their joint funds; it belonged to them jointly. That both before and after her father’s death the said Trahan repeatedly admitted verbally and in writing, and by act and deed, that an undivided half of all the real estate in his name in the town of Abbeville, including the lot now in controversy, as so held, belonged to said Paulin Eontelieu, and in no way claimed ownership of the whole thereof. That the said lot as well as all the property in his name in said town was with the full consent of Trahan assessed to himself and said estate jointly, and that he acquiesced therein accordingly. That he was well aware of the opening of said succession immediately after Paulin Eontelieu’s death, was an appraiser in, and knew and acquiesced in, an undivided half of said lot being inventoried as belonging to said Fontelieu and forming of said succession, and in its being administered and sold therein accordingly, and that he was appointed and served as agent for the collection of its moneys and rents, including those of the lot in contest. That, when petitioner’s said mother acquired the undivided half of said lot in 1878 as heretofore alleged, he was not only present and acquiesced in the sale of said property as belonging to succession of Paulin Fontelieu, but was a bidder at said sale and a purchaser of property thereat, and always acknowledged said half of said lot as belonging to Paulin Eontelieu and his estate, and by his said admissions, acts, and acquies-eences he induced petitioner’s said mother to believe that he recognized the ownership of said portion of lot by said succession, and that she purchased on the faith thereof. That by said acts, deed, recitals, acquies-cences, recognitions, and conduct set forth herein, and in her original petition herein es-topped, said Trahan of the parish of Vermilion, this defendant, and any person claiming through said Trahan were estopped from claiming said undivided half of said lot now sued for, and from asserting any title thereto which estoppel she now specially pleads.
That said W. W. Edwards, the defendant herein, was the attorney who conducted all the illegal and wrongful proceedings under which it is pretended that said lot 42 was sold to defendant in 1880, and was well aware of all the facts in the matter and of the nullities in said proceedings. She denied that any legal judgment was obtained against the said Trahan, who was an absentee, and to whom no curator ad hoc was ever appointed to defend said suit, nor, if judgment was legally obtained against said Trahan, which is denied, was any legal notice of judgment ever served upon said Trahan, nor upon any one representing him, and if any writ of fi. fa. was issued in said matter, which is denied, he shows that said Trahan was then an absentee, and that no curator ad hoc was appointed to represent him, and that no seizure was legally made of said property, and no notice of seizure ever legally given or served.
That said sale as well as the pretended seizure fi. fa. and all proceedings connected therewith are absolutely null and void, all as the said Edwards well knew, and conveyed no title whatever, nor were any steps ever taken to legally divest her said mother of the title to said property acquired by her in 1878 as set forth in the original petition, and which was immediately placed of record in the conveyance books of the recorder’s office of the parish of Vermilion.
That her said mother moved to Iberia parish, and was there in 1874 appointed natural tutrix of her said minor children. That whatever written agreement and acknowledgments relative to said property may have existed between her said parents and the said Trahan have been long ago lost or destroyed if they existed which petitioner verily believes, including all the books, accounts, and papers relative to said partnership, and all business conducted by it, as well as the lands *205 acquired for it and with its moneys. She shows, further, that the original file of the proceedings appointing her said mother tu-trix has been lost or abstracted from the clerk’s office of Iberia parish, including specifically her oath as such and letters of tutorship therein; that the duplicate copy issued to her as well as said appointment of Trahan as agent was placed of record in the recorder’s office of the parish of Vermilion, .and that same was destroyed in the destruction of said courthouse by fire, as heretofore alleged; and that it will be necessary for petitioner to introduce secondary evidence in reference thereto.
In view of the premises, petitioner prayed that this, her amended and supplemental petition, be allowed, and that all proper service hereof he made on the defendant according to law, and that, after due proceedings, there be judgment rendered against the defendant as prayed for in said original and supplemental petition heretofore filed, and petitioner prayed for costs and general relief.
Defendant and his children then filed a supplemental answer, denying that Trahan kept books or had partnership money, averred that said firm was insolvent, and denied that the lot was paid for with its moneys or belonged thereto. They reiterate that the property was Trahan’s and was incumbered with the legal mortgage from the bond as tax collector, and that no admission of his could impair their rights to estop them. They alleged that plaintiff’s mother never paid for the lot, nor had it assessed to her, nor claimed it during the years that defendant held it. They denied any illegality in the sale under which they acquired title or that Trahan was an absentee; that the proceedings were directed by the attorney of said sureties, and not by Edwards.
On trial judgment was rendered against plaintiff, and she appealed.
Opinion.
We understand it to be a matter conceded by all parties that the lot of ground of which the undivided half is sought to be recovered by the plaintiff herein belonged at one time to Daniel O’Bryan; that at his death it was an asset of his succession, and that at a succession sale made at public auction on the 18th of March, 1873, by the sheriff of the parish of Vermilion under an order of sale issued by the parish court of that parish, bearing'date the 8th of February, 1873, the said lot was offered for sale and adjudicated to Voorhies Trahan; that on April 8, 1873, evidence of this sale was placed of record in the Book of Conveyances of the parish of Vermilion.
It is asserted by the plaintiff in this suit that this sale was actually and really made to Voorhies Trahan and to plaintiff’s father, Paulin Pontelieu. There is no written evidence whatever to support such a claim. There was .nothing placed of record in the conveyance books of the parish of Vermilion going to show the existence of such a condition of things.
While the title to the lot stood on the conveyance records in the name of Voorhies Trahan, a writ of fieri facias issued from the district court for the parish of Vermilion in execution of a judgment rendered by that court in the matter of Houard Hoff-pauer, President of the Police Jury, v. Voor-hies Trahan, Tax Collector. Under that writ the lot in controversy was seized by the sheriff as Trahan’s property, and adjudicated on August 8, 1880, to W. W. Edwards, the defendant. The purchaser took immediate possession of the lot so purchased, and held possession of the same under recorded title continuously as owner from August S, 1880, up to July 27, 1907, when the present petitory action was instituted, and during that .possession has placed expensive and valuable improvements upon it.
*207 At the time of the seizure under the said writ of fi. fa., there was no legal reason why the sheriff should not have seized and sold the lot as belonging to Yoorhies Trahan, as there was ' no evidence in the conveyance records of any claim of adverse ownership. For the same reason that the police jury was authorized to seize and the sheriff to sell the lot as being so owned, there was no legal reason why the public was not legally authorized and justified in purchasing.
Any one purchasing at a judicial sale made under such circumstances became subrogated to the rights of the seizing creditors in so proceeding with the sale, and was not limited as a purchaser to the rights of the seized debtor in the property seized and sold by admissions which may have been made in respect to his ownership in favor of third parties that did not appear in the conveyance records.
In the interval between August 8, 1880, and July 27, 1907, opposition and objection from no quarter was made to the possession of Edwards under his claim of ownership of the property. Under the circumstances shown, it cannot be pretended that at the date of the institution of this suit the status of the defendant was that of a trespasser. I-Ie held at that time a position which entitled him legally to be presumptively considered quoad any attack upon his right of possession as a possessor in good faith under a recorded claim of ownership.
Every person who possesses an estate for a year or enjoys peaceably and without interruption a real right is entitled to be maintained in his possession, and is considered provisionally as owner of the same, even after it is reclaimed by another claiming to be the true owner, until the right of the person making such claim is established. Civ. Code, art. 8454.
Plaintiff’s claim to the ownership of the undivided half of the lot in controversy is predicated upon a sale alleged to have been made of the same, on the 11th of June, 1878, to petitioner’s mother, Octavie Gonsoulin, widow of Paulin Fontelieu, said sale alleged to have bfeen made under an order obtained in the matter of the succession of Paulin Fontelieu upon the petition of William F. Sehwing, administrator thereof.
Mrs. Octavie Gonsoulin (widow Paulin Fontelieu) removed to the parish of Iberia, and died about 1890, leaving as her sole heir the plaintiff in this suit. Neither the plaintiff nor her mother have had possession of the lot or are shown to have paid a dollar of taxes upon it. There is nothing in the conveyance records of Vermilion parish going to show that Paulin Fontelieu had a right of ownership to the lot or any part thereof. It is to the records of the conveyances in the recorder’s office of the parish that parties contemplating purchases must look, and by which they are guided, and not to the assessment rolls. Admissions of the party holding the title to the property under a deed thereto recorded in the conveyance books of a parish that not he but some other person named is the actual owner of the property have no effect as against third parties when such admissions have not been ifiaced of record in the conveyance books, and are not on their face sufficient to establish ownership. Verbal admissions by the recorded owner of property that some particular person other than himself really owns the property have no force and effect against third persons who act on the strength of the conveyance records.
Third persons dealing directly with the recorded owner in the conveyance records, with reference to the acquisition of real rights to the said property or upon it, or acting as a judgment creditor against said property by virtue of the condition of the ownership of the same as shown by the conveyance records, are protected in so doing *209 against the claims of others asserting ownership under the said recorded owner solely and exclusively on the strength of such admissions made by him adversely to the facts as shown by the conveyance records.
A person is not warranted or justified in dealing (in respect to the acquisition of real estate) with a person who does not appear as owner in the conveyance records of a parish, but whose claims thereto rest solely and exclusively upon admissions made by the party who appears in the conveyance records as owner that he, and not himself, is the actual owner. It does not make any difference in the case before us whether the undivided half of the lot in controversy in this suit was inventoried in the succession of Paulin Pontelieu and subsequently sold at a succession sale in the- matter of said succession as belonging to the succession, or that the origin and sole basis for the claim of ownership were verbal admissions of Voor-hies Trahan and that the latter had placed the property on the assessment rolls in the name of Pontelieu and Trahan. Those admissions and that placing of the property on the assessment rolls were totally insufficient under the registry laws to affect (quoad third persons) the title of Voorhies Trahan to the property as it stood recorded in the conveyance records.
Persons examining the records for the purpose of dealing directly with the recorded owner for the acquisition of particular property or for the purpose of proceeding judicially as a creditor of the recorded owner against said property as belonging to him are justified in taking action from what appears in the conveyance records, and are not called on to investigate all the subsequent relations between the recorded owner and some third person which might as between that recorded and such third person operate as an estoppel en pais between that third person and the recorded owner. Nothing appeared in the conveyance records ini this case.of any rights of ownership of Paul-in Pontelieu to the property in controversy..
We are of the opinion that all the claims and pretensions advanced by the plaintiff in support of a right of ownership by Paulin Pontelieu to the one undivided half of the lot in the possession of the defendant are met and defeated by the principles announced in the recent decision of this court of McDuffie v. Walker, 125 La. 152, 51 South. 100.
Plaintiff in this case must depend on the strength of her own title, and not on the weakness of that of the defendant.
We are of the opinion that the judgment appealed from is correct, and it is hereby - affirmed.
BREAUX, C. X I recuse myself having been of counsel at one time in matter of settling the succession of the late Paulin Ponte-lieu.